THE STATE OF OHIO, APPELLEE, *v.* REYNOLDS, APPELLANT.

[Cite as State v. Reynolds (1972), 32 Ohio St. 2d 101.]

(No. 72-243—Decided December 13, 1972.)

102

*Mr. George C. Smith,* prosecuting attorney, and *Mr. Eugene Paul Weiss,* for appellee.

*Mr. Roy F. Martin* and *Mr. Bernard Z. Yavitch,* for appellant.

CORRIGAN, J.  A single question under the law of search and seizure is presented in this appeal. Appellant frames the issue as follows:

"When police officers stop an automobile for failure to have a license plate light and arrest two of the three occupants on outstanding traffic warrants, they may not * * * then search the automobile under the guise of an 'inventory for safekeeping.' When two pistols are subsequently found under the arm rest of the car, during such an inventory search, they should be suppressed as having been obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures."

At the threshold, we observe that, here, we are dealing with a warrantless search of an automobile and that: "Automobiles, because of their mobility, may be searched without a warrant upon facts not justifying a warrantless search of a residence or office." *Dyke* v. *Taylor Implement Mfg. Co.* (1968), 391 U. S. 216, 221. "For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motorcar. * * * But even in the case of motorcars, the test still is, was the search unreasonable." *Preston* v. *United States* (1964), 376 U. S. 364, 366.

The facts show that the police officers had information from a police bulletin that the car in which appellant was a passenger fitted the description of a car used in recent robberies; that the arrest of appellant on an outstanding traffic warrant was a valid arrest, even though not made for the reason the car was stopped initially.

On those facts, it is apparent that the weapons seized were not the fruit of the crime for which appellant was arrested. However, fruits of a crime are not the only predicate upon which a search of a car incident to a lawful arrest can be justified as being reasonable. This was recognized in *Preston, supra* (376 U. S. 364, 367), where, in speaking of search and seizure incident to a lawful arrest, the court said:

"Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. *Weeks* v. *United States,* 232 U. S. 383,

392 (1914); *Agnello* v. *United States*, 269 U. S. 20, 30 (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, *Carroll* v. *United States, supra*, 267 U. S., at 158, and, to an extent depending on the circumstances of the case, to the place where he is arrested. *Agnello* v. *United States, supra*, 269 U. S., at 30; *Marron* v. *United States*, 275 U. S. 192, 199 (1927); *United States* v. *Rabinowitz*, 339 U. S. 56, 61-62 (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control.''

In *Terry* v. *Ohio* (1968), 392 U. S. 1, 22, the court noted that in the interest of crime prevention and detection ''* * * a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.'' At page 24, the court said: ''When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.''

Although *Terry* did not involve an automobile search, it was applied by the Supreme Court to such a case in *Adams* v. *Williams* (1972), 407 U. S. 143, 32 L. Ed. 2d 612. In that case, a police officer in his cruiser was told by an informant that ''an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist.'' When the occupant of the car, upon being asked by the officer to open the door, refused to comply but rolled down the window, the officer reached into the car and removed the loaded

revolver from defendant's waistband. The defendant was then arrested for unlawful possession of the pistol. Subsequently, *after other officers arrived,* a search was made by the officers, "and in the car * * * they found a machete and a second revolver hidden in the automobile," as well as heroin on defendant's person.

The court held that "* * * the arrest on the weapons charge was supported by probable cause, and *the search * * * of the car incident to that arrest was lawful,"* citing *Brinegar* v. *United States* (1949), 338 U. S. 160, and *Carroll* v. *United States* (1925), 267 U. S. 132. (Emphasis added.) Thus, the fruits of the search were admissible in evidence at defendant's trial.

As noted in *Chambers* v. *Maroney* (1970), 399 U. S. 42, 48, *Carroll* held that "* * * automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize."

Although we recognize that in *Adams* the holding in *Terry* was applied to validate the initial arrest rather than seizure of the items from the car, we note that the facts surrounding the search in *Adams* are similar to the facts here in that in both instances there was apparently no immediate danger that the person arrested would remove the weapon from the car and use it. Here, the search of the car was conducted by the officer after the occupants were outside the car. In *Adams,* the "search incident to * * * arrest" was conducted *after* other officers arrived.

We are of the opinion that the totality of the circumstances confronting the police officers when the arrest was made—the ski masks, the police-band radio, and the knowledge that the car fitted the description of a car used in recent robberies—"were sufficient to warrant a prudent man in believing that the * * * [suspect] had committed or was committing an offense" (*Beck* v. *Ohio* [1964], 379 U. S. 89, 91), and to justify a belief that the appellant was "armed

and presently dangerous to the officer or to others" and that "it would * * * be clearly unreasonable to deny the officer the power to take necessary measures * * * to neutralize the threat of physical harm." *Terry* v. *Ohio, supra* (392 U. S. 22), at page 24.

Thus, we conclude that it was reasonable for the officers, at the time of appellant's arrest, to make a contemporaneous search of the person of the accused for weapons and that such right to search extended to the car. *Preston* v. *United States, supra* (376 U. S. 364); *Carroll* v. *United States, supra* (267 U. S. 132).

In view of our conclusion that the search of the car incident to lawful arrest was reasonable and not violative of appellant's rights under the Fourth Amendment, we find it unnecessary to pass on the state's contention that the search was justified for the purpose of inventorying the contents of the vehicle for safekeeping.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, STERN and LEACH, JJ., concur.

HERBERT, J., concurs in the opinion and judgment.

BROWN, J., dissents.

HERBERT, J., concurring. I concur in the opinion and judgment in this case, but am not in accord with the method employed in framing a syllabus to express the legal conclusions announced.

BROWN, J., dissenting. I must respectfully dissent from my distinguished colleagues' majority view that the officers compelled by "the totality of the circumstances" had a right to make an "inventory search" of the automobile which, according to their testimony, was stopped for "no license plate illumination" and other "suspicious circumstances."

The "suspicious circumstances" detailed by the officers were that one occupant of the car in the back seat was allegedly wearing a ski mask, and that the car fitted the description of a car used in recent robberies. The record reveals that there was no subsequent tie-in of the car with any robberies, nor even an investigation of this car or its occupants in connection with any robberies in the Columbus area.

The record reveals further that the individual who, by wearing a ski mask, attracted the attention of the officers to the automobile had no identification upon his person, was not detained, arrested or charged with a violation of any ordinance or statute.

It must first be determined what is the purpose of an "inventory search." The basic reasons are to protect the arresting officer, to save harmless the officer making the arrest and subsequent search from a possibility of civil liability from any claim of loss for articles of personalty belonging to the arrestee, and to protect the articles of the personalty from loss or damages.

The majority, in their opinion, feel that the officers had a right to search the car for weapons. However, the record reveals that the officers were not searching for weapons, they were not searching for contraband which would put them squarely within the scope of *Cooper* v. *California* (1967), 386 U. S. 58.

Unlike the circumstances that existed in *Terry* v. *Ohio* (1970), 392 U. S. 22, here, there were no facts incident to a lawful arrest that would give rise to a search other than that of the person.

The record reveals also that not until after the "inventory search" had been made were bullets found on the person of the defendant.

Because of the alleged suspicious circumstances, had "frisk" of defendant immediately upon his arrest revealed the bullets in his pocket, I could be easily convinced that this was a valid search incident to a lawful arrest.

The facts here point to the opposite. The man in the rear seat who had allegedly been wearing a ski mask was dismissed, without charge or suspicion. The defendant and his brother were arrested, and taken to the police vehicle. Immediately thereafter the car was subjected to "inventory search."

Clearly, under the facts and circumstances presented the search became an "inventory search" exploratory in nature and violative of the defendant's rights under the Fourth Amendment.

At best, the totality of the circumstances shows, prior to the search of the automobile, that three men were riding in an automobile with no license plate illumination, that the automobile had not been stolen, but allegedy fitted the description of an automobile used in recent robberies, and that the defendant and his brother were wanted for previous traffic offenses.

The Fourth Amendment requires that, absent circumstances indicating danger or threat of violence, an officer taking a traffic offender into custody limit his search of that person to protective "frisk" for weapons.

The real test under the Fourth Amendment is reasonableness. To allow the officers to search for weapons when they clearly indicate that they were only making an "inventory search" suggests an "intolerable and unreasonable" invasion of the privacy of all persons who travel by automobile.

I must conclude that the "inventory search," was unreasonable, the automobile not being stolen, and the defendant and his brother being wanted only for previous traffic offenses.

For the foregoing reasons, I feel that the judgment of the Court of Appeals should be reversed.