The State of Ohio, Appellee, *v.* Gaines, Appellant.

[Cite as State v. Gaines (1974), 40 Ohio App. 2d 224.]

(No. 72362—Decided January 28, 1974.)

*Mr. RobertBlackmore* and *Mr. Donald Schott*, for appellee.

*Mr. Calvin Prem* and *Mr. Harry H. McIlwain*, for appellant.

O'NEILL, J. The defendant, appellant herein, was indicted upon a charge of first degree murder. It was claimed that he had killed a person during the perpetration of a robbery. The cause was tried to a jury which returned a verdict of guilty. Rather than prefacing this opinion with a lengthy fact resume, we shall present the pertinent facts as they apply to each assignment of error.

Mr. Goldhagen testified that on January 21, 1972, he was the owner of the Wein Bar. He said that he, Mrs. Ewing, a barmaid, and a Mr. Buchanan left the Wein Bar together, walked about 20 or 25 feet away when several youngsters ran up to them, one of whom tried to grab Geraldine Ewing's purse, at which point Mr. Gaines, the defendant, "ran up with his gun and started shooting a[t] Mr. Buchanan." Mr. Goldhagen saw defendant then run "towards Reading Road."

Geraldine Ewing testified that she left the Wein Bar with Mr. Goldhagen and Mr. Buchanan, who was carrying a paper bag belonging to her containing some hard rolls, crackers, popcorn and, a container of soup. She testified that as they were walking the following occurred:

"a gang come from all directions and hollered—and one person hollered 'Give me that bag and give me your purse' and three shots went off." She saw Buchanan fall and as she ran to his side someone "snatched the purse off my shoulder." She did not see who snatched the purse. She identified her purse and contents. She identified defendant as the man who fired the shots killing Mr. Buchanan.

Paul Cottrel testified that he heard three rapid shots, saw the decedent and saw defendant running from the scene. He further stated that he told the police the same facts he testified to in court.

Larry Cash, a state witness, declared hostile, admitted under cross-examination that defendant had told him that he wanted a lady's purse and shot a man.

William Webb testified that at the time in question he was seated in his car waiting for his wife. He heard a shot and saw a man come across the street and walk toward his car. This man, who turned out to be the defendant, got

into the back seat of his car flashed a gun and said "drive." The defendant sat in the rear seat and Webb saw him looking through a purse. Mr. Webb told defendant he had no gas so defendant told Mr. Webb to stop for gas and gave him some money for the gas. While in a gas station, Gaines gave Mr. Webb the pocketbook and said: "Get rid of that." Mr. Webb placed the purse in the trunk of his car. Mr. Webb was subsequently stopped by the police "because I was speeding." He was removed from his car, at gun point, and taken to the police station. He was not aware of any search or conversation with the police at the point of interception. At the police station, Police Lieutenant Dale asked Mr. Webb for permission to look in the trunk of his car and Mr. Webb gave permission and the purse was found. Mr. Webb stated that at all times during his drive with defendant he was reluctant of driving with him.

This testimony came before the jury in the form of a deposition. The prosecution insisted that Mr. Webb could not be found and produced for trial. In support thereof, the state produced a process server of the Hamilton County Sheriff's Office. This witness stated that he tried to serve a subpoena on Webb but was unsuccessful because members of the family did not know his whereabouts. He went to Webb's home twice but to no avail. This deposed testimony was elicited at a pre-trial hearing on defendant's motion to suppress evidence. Defendant was present at such hearing, cross-examined Mr. Webb and testified.

The defendant questions the introduction of this evidence in his assignment of error No. 4, the thrust of his argument being that the state had failed fully to account for Mr. Webb's absence. The pertinent statute (R. C. 2945.-49) specifies that the testimony of a witness, who cannot for any reason be produced at trial, taken at an examination at which the defendant is present, may be used at trial. There was an attempt, on the part of the state, to produce the witness. He could not be produced because he could not be found. We hold that a sufficient attempt was made to produce the witness. At the hearing on the motion, the defendant confronted the witness and called him as his

witness. He complains that now the state wants to produce evidence secured in cross-examination. We have reviewed the transcript of this testimony and do not find that any right of the defendant was erroneously affected by cross-examination and, accordingly, we hold it to be competent and deny assignment of error No. 4.

Following the presentation of the Webb transcript, Officer Henson testified. He said that on the night, in question, while on routine patrol, he noticed two male negro occupants of a car look suspiciously at him. As he checked the license number, he noticed the license plate light was out. Since he was going in the opposite direction, he turned his car around to check the license number. The other car immediately accelerated and there followed a high speed chase for 3½ miles. Mr. Henson forced the car to a stop, held the occupants, Webb and Gaines, at gun point until fellow officers arrived. He flashed his "light into the car, and on the back seat there were several envelopes, a gas and electric bill, and a driver's license. The driver's license and gas and electric bill had the name of Geraldine Ewing." He had heard over his radio that murder suspects were "supposed to have a gray purse with them with the personal contents of a Geraldine Ewing." He said, further, that Webb gave him and Lieutenant Daley permission to search his car, which they did and found Mrs. Ewing's purse. Note is made at this point that defendant did not see Officer Henson go into Webb's car.

The defendant argues for his first assignment of error that the whole case against him was the result of an illegal arrest, search and, seizure. The state contends that he has no standing to contest a search of the automobile which neither belonged to him, nor was in his possession. We prefer the approach of the United States Supreme Court in *Jones* v. *United States*, 362 U. S. 257, where the court at page 267 held:

"* * * anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress * * *."

The state presented evidence that defendant was in the Webb car by way of force. Defendant says that he was

a guest, but admits that he entered the car with the stolen purse, a gun in his possession and one in the purse. Gaines said he put his gun in the purse, handed it to Webb and, Webb placed it in the trunk without removing any papers therefrom. His inconsistencies destroy his probity. Officer Henson saw papers from the purse on the back seat. Webb saw Gaines going through the purse in the back seat. The evidence was not in equipoise; beyond a reasonable doubt, Gaines was not in the car legitimately. He had no standing to attack the alleged search of the car. Even if he had the right, we find nothing illegal about the search itself. An officer, Henson, checking a license number, finds himself involved in a breakneck pursuit at high speed. He is forced to ram the car to stop it. He has had a radio communication to be on the lookout for homicide suspects who have in their possession a lady's purse and its contents. Upon looking into the car, he sees what appears to be the contents of a lady's purse. He seizes the same and ascertains that the items are tied into the homicide. A clear case of observation of open and in-view evidence with no unreasonable intrusion.

Furthermore, this fact pattern is similar, almost identical, to that presented to the Supreme Court in the case of *State* v. *Reynolds,* 32 Ohio St. 2d 101. In the *Reynolds* case, the court spoke of a "totality of the circumstances" as making a search reasonable. The court cited, at page 104, a portion of the opinion in *Terry* v. *Ohio,* 392 U. S. 1, 22, which would be applicable to the present case:

"In *Terry* v. *Ohio* (1968), 392 U. S. 1, 22, the court noted that in the interest of crime prevention and detection '* * * a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' "

In summary, *Reynolds* and *Terry* recognize the fact that very often a competent police officer, and Mr. Henson obviously is a competent officer, is faced with a chain of facts which in totality lead him prudently to believe that he is faced with a person who has committed an offense. The court reasoned that under such circumstances a warrantless search is neither unreasonable, nor illegal.

Along with our opinion that defendant had no standing to complain about the seizure, we find nothing in the search and seizure violative of the defendant's constitutional rights.

In this assignment, defendant argues that since there was no valid arrest, there was no right to search. In answer to this, we should consider Officer Henson's testimony. He had chased the car for three miles at speeds up to ninety miles per hour. Numerous traffic laws had been violated. Previous to this, he had a radio run to this effect.

"Wanted for homicide and armed robbery, and they should have a purse and personal contents of a Geraldine Ewing." Most certainly this officer had probable cause to believe that he had in custody a person who had committed a felony. Assignment of error No. 1 is overruled.

The defendant argues, for his third assignment, that he was prejudiced when the prosecution was permitted to cross-examine two of its own witnesses, Cottrell and Cash. The state presented Cottrel as a witness. The state repeatedly attempted to lead the witness by reminding him of prior statements made by him to the prosecutor. After sustaining objections, the court finally said, in ruling upon the objections:

"Well, there's no question but what there's a reluctance in his delivery of what he saw out there."

The court declared the witness to be hostile and allowed cross-examination. This is a difficult question to pose on appeal. Hostility or defection of a witness can best be determined by the trial judge. It is he who has the opportunity to observe the demeanor of the witness and best determine hostility or surprise. In the instant case, the trial judge made such a determination as to Cottrell, and we find nothing to reverse him thereon. Furthermore, upon cross-examination, the prosecution reasonably contained itself within the guidelines cited by defendant in the case of *Hurley* v. *State*, 46 Ohio St. 320. Mr. Cash was produced as a witness by the state. After a few questions, the state insisted that Cash's in court testimony contradicted prior statements made by him. This is evidenced by the following excerpts from the record.

"Mr. Blackmore: * * * He's changing his story and he's a hostile witness. * * *

"The Court: Gentlemen?

"Mr. Prem: You can't believe any of these people. They all lie."

The defendant volunteered to the court that perhaps Cash would lie. Certainly, in the exercise of discretion, the trial court was justified in allowing cross-examination, which was well within reasonable bounds. Assignment of error No. 3 is overruled.

As we begin to consider assignment of error No. 5, we must make it clear that upon our review of the evidence, and in view of our previous rulings in this opinion, the focus, as used in *Miranda* v. *Arizona*, 384 U. S. 436, was upon defendant at all times after Officer Henson "* * * told the other two officers to take them to the district and hold them for investigation of homicide."

During the course of trial, the state produced a tape recording of a statement given by the defendant on the day of the crime in question and while he was in custody. This tape was played in front of the jury, but for some reason was not transcribed by the court reporter. The tape has been played by this court and transcribed. In essence, the tape was a confession by defendant and he challenges its admissibility under his fifth assignment of error. The state laid the groundwork for the admission of the recording upon the testimony of Police Officer Gerald R. Gramke. Mr. Gramke stated that his first contact with defendant was between 1 and 2 p. m on the day of the homicide. Gramke stated that defendant was given his "rights" and the statement was recorded. Mr. Gramke knew of no previous interrogations and knew of no threats or promises. The recorded statement opens with a very complete explanation to the defendant of his rights and an acknowledgment by him and a waiver. The defendant testified that he was "high" on drugs the night of his arrest; that he was questioned continuously from 3 a. m. until 8:30 a. m. During this time, the questioning had to do with the type of drugs that he was "on". He was not given his rights, but he apparently gave no incriminating evidence. At 8:30 a. m., he said he was moved to the Alms & Doepke Building where a De-

tective Williamson started questioning him about the homicide. Gaines said that he was not advised of his rights and that he "asked to call a lawyer." He said that Williamson refused his request and continued to question him until noon. Gaines admitted that he was advised of his rights "at the time I started making a statement." Gaines said he gave the statement because he was tired and because Detective Williamson told him he would talk to the Judge. Upon cross-examination, the defendant was not as direct in his answers relating to his statement. He was quite intelligently evasive. Upon review, we find Mr. Gaines claiming that he repeatedly demanded a lawyer, yet, upon the recording he was afforded all of his rights and he waived them. If defendant's claim is that the statement was compelled by hope of reward, the burden is upon him to prove his claim and this he has not done. (*Rufer* v. *State,* 25 Ohio St. 464; *State* v. *Kassow,* 28 Ohio St. 2d 141.)

The defendant has further failed to produce any evidence to indicate that after he was informed of his *Miranda* rights, he did not intelligently, understandingly and knowingly waive his rights. (See paragraphs 3, 4 and 5 on page 146 of *State* v. *Kassow, supra.*)

Defendant injects the question that he was tired and affected by dope when he gave his statement. His voice in the recording is clear, concise and aware. It neither bespeaks fatigue nor befuddlement. Assignment of Error No. 5 is overruled.

The defendant argues, in his second assignment of error, that since he was indicted for first degree murder, he was entitled to a Special Venire in view of R. C. 2945.18. Under R. C. 2945.19, a person indicted for a capital offense is entitled to a special venire. A "capital offense" has been defined as follows:

"A 'capital offense' is one for which the death penalty may be imposed." *Edinger* v. *Metzger,* 32 Ohio App. 2d 263, paragraph 2 of the syllabus.

The Court of Appeals in the *Edinger* case said in their opinion, at page 265:

"To now hold that murder in the first degree under this provision of R. C. 2901.01 is a capital offense is to amend the Constitution, a right resting exclusively with

the people. See *State* v. *Pett* (1958), 253 Minn. 429, 92 N. W. 2d 205.''

Assignment of error No. 2 is overruled.

At the close of all the evidence, the defendant moved for a reduction in the charge from first degree murder to manslaughter. One basis being that there was a failure of proof on the matter of robbery. This motion was overruled and is now raised as defendant's sixth assignment of error.

The indictment returned charged that defendant did unlawfully, purposely, intentionally and while perpetrating robbery kill Floyd Buchanan.

The defendant does not deny the death of Buchanan, but argues that there was no robbery. Defendant claims that he grabbed Miss Ewing's purse after the shooting and then only for protection because he thought she had a gun. This theory is refuted by defendant's recorded statement. In his statement to Detective Robert Williamson, he placed the theft of the purse as taking place before the shots were fired. For the sake of this assignment, we shall consider the contention that the purse was taken after the shots were fired. The jury had the right to consider all of the circumstances surrounding the event. The defendant was there with a gun, in a threatening manner, he did steal the purse. In his testimony before the jury, in person, defendant said he grabbed the purse after his gun accidentally discharged because it looked like she was going to get something, he never said what she was getting. The rationale that should be applied to the evidence is comparable to that indulged in by the Court of Appeals in the case of *State* v. *Fugate*, 36 Ohio App. 2d 131. In that case, the court was faced with the problem of the establishment of an intent to commit a crime. The court in a portion of paragraph one of the syllabus said:

''* * * and such intent may be deduced from all the surrounding circumstances * * *.''

We feel that the ''surrounding circumstances'' in the present case were sufficient to allow the jury to arrive at the only conclusion that defendant killed decedent while in an attempt and perpetration of a robbery. There was a lack

of proof that the purse was taken as a defensive gesture.

Under this assignment of error defendant argues, also, that the taking of the purse was not robbery because the taking was not by force or violence, or by putting in fear. Once again the jury could look at all attendant circumstances and justifiably arrive at the conclusion that defendant did steal things of value, not only Miss Ewing's purse but some bags possessed by decedent, in an atmosphere of force and violence created by defendant.

Assignment of error No. 6 is overruled.

At the close of all the testimony, the defendant moved for a directed verdict on the ground of insanity. Defendant contended that there was clear and convincing evidence that he, at the time of the crime, was laboring under a defective reason that caused him to be in such a condition that he could not conform to the law. The court overruled the motion, stating:

"I think that that's a matter for the determination of the jury." The trial court was correct. The question, when pleaded as a defense, is for the jury to determine.

"The question of insanity, upon a murder prosecution, is purely one for the determination of the jury." *State* v. *Pownall*, 30 Ohio Law Abs. 315, headnote 2.

There is an exception to the foregoing.

"Under a plea of not guilty by reason of insanity, the burden of establishing such defense rests upon the defendant by a preponderance of the evidence. When from the evidence reasonable minds may reach different conclusions upon the question of insanity, such question of fact is for the jury. If, however, after giving the evidence the most favorable interpretation in favor of the defendant, reasonable minds can come to but one conclusion and that conclusion adverse to defendant, it is the court's duty to rule on the issue as a matter of law." *State* v. *Ross*, 92 Ohio App. 29, paragraph 6 of the syllabus. (Appeal to Supreme Court denied, 158 Ohio St. 248.)

Assignment of Error No. 7 is overruled.

In his eighth assignment, the defendant argues the issue of insanity, contending that there was a preponderance of proof before the jury which should have led the

jury to a finding of insanity at the time of the crime. A defendant pleading insanity must establish by a preponderance of the evidence that because of a disease or a defect of his mind he did not know that his act was wrong or he did not have the ability to refrain from doing the act. Paragraphs 1 and 2 of the syllabus of *State* v. *Staten*, 18 Ohio St. 2d 13, states:

"1. One accused of criminal conduct is not responsible for such criminal conduct if, at the time of such conduct, as a result of mental disease or defect, he does not have the capacity either to know the wrongfulness of his conduct or to conform his conduct to the requirements of law. * * *

"2. In order to establish the defense of insanity where raised by plea in a criminal proceeding, the accused must establish by a preponderance of the evidence that disease or other defect of his mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act."

The trial judge, in his charge, correctly stated the test of insanity as set forth in the *Staten* case. The court reiterated this charge. Defendant argues that the reiteration was erroneous and misleading. We have read the reiteration. It reads as follows:

"* * * To reiterate, a person is insane and not responsible for criminal conduct if at the time of his act he had a disease or other defect of his mind, that such disease or defect impaired his reason, and, finally, that his reason was so impaired that he did not know that what he did was wrong."

This portion of the reiteration might have been misleading in view of the fact that it appeared to be in the conjunctive, requiring disease *and* impairment. However, the court continued, correctly, as follows:

"In other words, a person is insane if a mental disease or defect so impaired his mental power to understand the nature and the consequences of his act *that he did not know that the particular act was wrong or that he did not have the ability to avoid committing the criminal act."* (Emphasis added.)

The Supreme Court in *State* v. *Anders*, 29 Ohio St. 2d 1, said in its syllabus that an instruction upon insanity "must contain language from which the jury may conclude that disease or other defect of the defendant's mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act."

In the overall, the charge of the trial court stands up to the test of *Anders*. The trial court, also, properly instructed the jury as to the consideration of intoxication or drug addiction as affecting the required element of purpose or intent. He properly differentiated between chronic, which would cause derangement, and voluntary.

The defendant argues, also, that there was no evidence to rebut evidence that defendant was insane at the time he committed his act. None of the three psychiatrists stated that defendant was legally insane at the time he committed his act. There was some inference that he might have been. The defendant, himself, testified as to some strange occurrences in his mentality. All in all, the evidence of insanity was questionable; it was not clear cut as defendant argues. It is not our function to weigh the evidence and not for us to determine the credibility of the lay witnesses, especially Mr. Gaines, who testified about his mentality. We look to sufficiency, and we find sufficient evidence to support the jury's finding that defendant was not insane when he committed his act of murder.

The judgment of the lower court is affirmed. We would be remiss if we were to conclude without commending counsel for their very well drawn briefs and presentations.

*Judgment affirmed.*

LYNCH, P. J., and DONOFRIO, J., concur.

LYNCH, P. J., O'NEILL and DONOFRIO, JJ., of the Seventh Appellate District, sitting by designation in the First Appellate District.