THE STATE OF OHIO, APPELLEE, v. CONN, APPELLANT.

(No. 1700—Decided December 31, 1982.)

*Mr. James A. Berry,* prosecuting attorney, and *Ms. Sally L. Dilgart,* for appellee.
*Mr. Louis I. Hoffman,* for appellant.

KERNS, P.J.    Defendant, Norman Conn, was tried in the Court of Common Pleas of Clark County without the intervention of a jury and found guilty of aggravated assault, and from the judgment and sentence thereupon entered, Conn has perfected an appeal to this court.

At the trial, appellant relied upon the defense of insanity, and the first assignment of error has been set forth as follows:

"1.    The trial court's finding of lack of sufficient evidence to prove insanity by a preponderance of the evidence is against the manifest weight of the evidence."

The evidentiary test to be applied to the defense of insanity is set forth in *State* v. *Staten* (1969), 18 Ohio St. 2d 13 [47 O.O.2d 82], paragraph two of the syllabus, as follows:

"In order to establish the defense of insanity where raised by plea in a criminal proceeding, the accused must establish by a preponderance of the evidence that disease or other defect of his mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act."

In *State* v. *Austin* (1905), 71 Ohio St. 317, the Supreme Court of Ohio commented, in paragraph two of the syllabus, upon the law applicable to the present case as follows:

"The law presumes every person sane until the contrary is shown, and in a criminal case this presumption of sanity serves the state as the full equivalent of express proof until such time as it is made to appear by a preponderance of the evidence that the defendant was insane at the time of committing the crime alleged against him."

With the evidentiary burden thus established, we have turned to the record which shows that on Sunday, January 17, 1982, at about 2:00 a.m., after an evening of drinking, appellant went to the home of his mother where he remained until approximately 7:00 p.m. He then returned to his own home, unsuccessfully tried to sleep, and in a talkative and agitated state, proceeded to telephone several friends and family members, "saying obscene things" and "talking in language he doesn't normally use." At the time,

Conn's wife attempted to dissuade him, but being unable to do so, she disconnected the phone, whereupon appellant struck her for the first time in their married life.

Thereafter, Conn left home to visit friends and neighbors, where he consumed more alcoholic beverages and engaged in some impromptu, but reportedly friendly, sparring matches before returning to the home of his mother, Eileen Conn, where later, in a fit of anger, he kicked over the television set and overturned a birthday cake which had been presented to his mother earlier in the day. Following this episode, appellant left his mother's apartment and proceeded to a neighbor's abode where the police were summoned because of his abusive behavior. No charges were filed, however, and Conn was returned to his own home on January 18, 1982, at about 5:00 a.m., only to return once again to his mother's residence about one hour later.

On the same morning, at about 9:00 a.m., and again at about noon, appellant consumed a six-pack of beer at his mother's home. Later in the afternoon, he made a series of obscene phone calls. Thereafter, he burned himself with cigarettes and stuck cigarettes into his ears and nose. Later, he removed a family portrait from the wall and defaced the picture. He then bit into a butane lighter, disassembled a brass clock, ate some flowers, and sprayed his throat with furniture polish.

As the condition of appellant became worse, he threw a chest of drawers out of the window of his mother's apartment, "whirled around in the middle of the floor," stripped naked, emptied flower pots, and rubbed the soil over his body. He then went to his mother's kitchen where he obtained a knife, took a coat from a closet, and proceeded to slash at the coat with the knife.

According to the evidence, Conn then gave his mother several karate-style kicks to the stomach, sprayed paint in her hair, and struck her about the face. He then proceeded to cut his own wrists, and when asked by his mother to stop, Conn slashed out at her with the knife, inflicting multiple, life-threatening lacerations to her arms and legs. Appellant later threw dirt on his bleeding mother, pushed his fists and arms through plate glass windows, and reportedly threw more furniture from the apartment before the arrival of the police officers who removed both appellant and his mother to the hospital.

At the trial, the evidence disclosed further that Norman Conn was thirty-three years of age, married, and the father of two children, and that he had been recently laid off by International Harvester Company where he had worked for fifteen years. For a period of time, appellant had also worked two jobs in order to help pay for his wife's college education, and at the time, Conn himself was enrolled in his third year of college.

From the evidence, it appears further that Conn had a particularly close attachment to his mother, and that he had sold his own home at one time in order to pay off debts incurred by his mother following her second marriage. Both appellant and his mother have a history of mental illness.

At the trial, the defense submitted the testimony of Dr. Max Graves, who concluded his observations with an opinion that Conn was in a psychotic state on January 18, 1982, which rendered him legally insane at the time of the assault upon his mother. Graves saw Conn on January 18, 1982, at about 11:30 p.m., on the jail floor as appellant was shouting and cursing. He was described as "out of contact." Dr. Graves testified further that Conn's illness had a gradual onset; that his history militated against any possibility that his condition was feigned; that alcohol alone could not explain appellant's conduct; and that Conn's "grossly abnormal" behavior indicated that he was suffering from a mental defect or disease at the time of the assault which

denied him the capacity to appreciate "the criminality of his conduct."

Another expert witness, Dr. Warren Shea, concurred with the findings of Dr. Graves, and he likewise found appellant to be an intelligent man, but one who loses contact with reality, during which time he suffers from "irrational, illogical and unrealistic thinking." In his medical report, Dr. Shea observed specifically as follows:

"It is my opinion, given the nature of his previous behavior pattern during acute psychotic episodes, the bizarre behavior while operating under the delusions that he was Tarzan, coupled with the manifestations of psychosis displayed shortly after the event while in jail, and the efficacy of the anti-psychotic medication in restoring him to sanity, that at the time of the event Norman Conn was legally insane. One characteristic of the reactive psychosis is that they do respond favorably and rapidly to the anti-psychotic medications. * * * [T]he defendant did not present the picture of a person suffering from a disease of mind which overwhelms him daily, or which precludes his being able to function in a reality-oriented manner. With that in mind, his unusual behavior during the weekend of January 15 to 18 would have to be viewed as abnormal for him, or for anyone else. Such an acute, abnormal break with reality can only be defined as being of psychotic proportions, and sufficiently disruptive to the individual to justify labelling it as insane in the legal sense."

A jail nurse, Mary Ann Casson, and the arresting officer, Douglas Estep, also testified as to the unusual behavior of Conn on January 18, 1982, but neither the testimony of the lay witnesses nor the evidence of the expert witnesses met any direct challenge at the trial of the case. Rather, the state relied upon the presumption of sanity which the law attaches to every person (*State* v. *Austin* [1905], 71 Ohio St. 317), and this brings into focus the contention of appellant herein that the finding of the court of common pleas is against the manifest weight of the evidence.

The term "weight of the evidence" is not subject, of course, to either the number of witnesses or the quantum of testimony. In this case, the only evidence bearing upon the mental state of Conn at or about the time of the offense may be fairly characterized as impressive and convincing, and the term "preponderance of the evidence" means nothing more than that the evidence on one side of the scale outweighs that on the other. See 21 Ohio Jurisprudence 2d (1956) 722, Evidence, Section 695. And while the determination of credibility in this case, as in all cases, was an exclusive prerogative of the trier of the facts, the record discloses substantial corroborative testimony from witnesses who had no reason to relate anything other than the truth as to the appearance and condition of appellant on January 18, 1982. Cf. *State* v. *Thomas* (1982), 70 Ohio St. 2d 79 [24 O.O.3d 150].

As to the degree of proof required in such cases, the Supreme Court commented as follows almost a century ago:

"Doubtless insanity is a defense that may be feigned, and frequently is where no other defense is available, but because artful criminals may adopt it as a last resort, is not a sufficient reason to impose upon the unfortunate, in whose behalf this humane defense is honestly interposed, a higher degree of proof than intrinsically belongs to it." *Kelch* v. *State* (1896), 55 Ohio St. 146, 153.

All evidence which probes the human mind and explains human behavior necessarily has inherent infirmities, but for some reason or other, the state produced no rebuttal evidence in these proceedings, and with the balance hanging between appellee's bare presumption and appellant's direct evidence, we are of the opinion that the state rested its case with the evidence preponderating in favor of

the defense upon the issue of insanity. Hence, the first assignment of error is well-taken.

The second assignment of error has been stated by appellant as follows:

"2. The trial judge was biased and prejudiced toward defendant and should have disqualified himself before trial."

In support of this alleged error, appellant has alluded to alleged statements and conduct of the trial judge for the purpose of showing that the court was biased and unfair, but the alleged error is not affirmatively supported by the record in this case. The second assignment of error is overruled.

Based upon appellant's allegations that the finding upon the defense of insanity was against the weight of the evidence, the judgment will be reversed and the cause remanded to the court of common pleas for a new trial.

*Judgment reversed and cause remanded.*

WILSON and BROGAN, JJ., concur.