Maria J. Weber, appellant, appeals a September 3, 1998 judgment of the Franklin County Court of Common Pleas finding her guilty of one count of theft in violation of R.C. 2913.02, a third-degree felony, and one count of possession of a criminal tool in violation of R.C. 2923.24, a fourth-degree felony.
Appellant is a citizen of Poland and entered the United States as a permanent resident in October 1989 to live with her husband and daughter. On May 15, 1990, appellant was shopping at the Eastland Mall in Columbus, Ohio. Sandi Engle, a security officer for Lazarus, testified that at approximately 1:00 p.m. she observed appellant carrying a large purse and randomly selecting several garments from the junior department without looking at the price or size. Using Lazarus's security camera system, Engle continued to watch appellant for approximately five to ten minutes and observed appellant walking toward a fitting room. Engle left the camera room and arrived on the sales floor within thirty seconds, where she observed appellant entering one of the fitting room stalls.
Engle testified that she entered a stall next to appellant's stall and continued surveillance by watching appellant underneath the stall partitions. Engle stated that she saw appellant conceal six items inside a girdle that she was wearing underneath her dress. Appellant was in the fitting room for approximately ten minutes.
Appellant left the fitting room and returned some of the merchandise she had taken into the fitting room to the sales floor. Appellant then left the store, at which time Engle and her partner approached appellant and asked her to return to the store. Appellant and the two security officers returned to the sales floor and asked appellant to return the merchandise. Appellant pulled out several hangers from her boots and then took off her girdle to return the items she had concealed inside of the girdle. The merchandise included a jacket, a dress, two pairs of pants, and two tank tops. Appellant's purse contained other merchandise from Lazarus and other stores within Eastland Mall. Appellant admitted to Engle that the items were stolen.
On May 23, 1990, appellant was indicted on two counts. Count 1 charged appellant with theft, a third-degree felony, and alleged that appellant had prior convictions in 1989 for theft and unauthorized use of property. Count 2 charged appellant with possession of a criminal tool, the girdle, a fourth-degree felony.
On November 12, 1990, appellant pled guilty to attempted theft, a misdemeanor of the first degree, as a lesser offense of Count 1. Count 2 was dismissed. On December 17, 1990, appellant was sentenced to six months in jail with credit for thirty-six days actually served. The court suspended the remaining sentence and placed appellant on probation for two years.
On March 21, 1997, appellant filed a motion to withdraw her guilty plea. Appellant's motion claimed that the trial court failed to advise her that her guilty plea may affect her immigration status and that this failure required the guilty plea to be vacated. On May 7 and 8, 1997, the trial court held a hearing and overruled appellant's motion to withdraw her plea. Appellant appealed. On December 31, 1997, we reversed the trial court and set aside appellant's conviction.
On July 1, 1998, the trial court held a new trial on the two original charges, and appellant was found guilty on both counts as charged. On September 1, 1998, the trial court sentenced appellant to eighteen months on both counts, which were to be served concurrently. The trial court also fined appellant $5,000, plus court costs. The trial court noted on the criminal sentencing sheet, "no early release." Appellant appeals this judgment.
Appellant asserts the following five assignments of error:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN EXCLUDING EXPERT TESTIMONY AS TO THE SIGNIFICANCE OF THE DEFENDANT'S CURRENT ECONOMIC STATUS IN DIAGNOSING THE DEFENDANT AS HAVING A MENTAL ILLNESS OR DEFECT.
SECOND ASSIGNMENT OF ERROR
 WEBER WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
THIRD ASSIGNMENT OF ERROR
 THE JURY VERDICT FINDING THE DEFENDANT GUILTY OF THE THEFT OFFENSE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
FOURTH ASSIGNMENT OF ERROR
 THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT DEFENDANT'S CONVICTION OF POSSESSION OF A CRIMINAL TOOL.
FIFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE DEFENDANT TO A TERM OF INCARCERATION GREATER THAN THE ONE IMPOSED AFTER HER PLEA IN 1990.
Appellant argues in her first assignment of error that the trial court erred in excluding expert testimony concerning her current economic status. Appellant argues that this information was necessary to diagnose her as suffering from a mental illness or defect.
At the trial, Dr. Daniel Hrinko, a psychologist, testified on behalf of appellant. On redirect examination of Dr. Hrinko, appellant's counsel elicited testimony from Dr. Hrinko that appellant's husband had died in 1996 and that appellant has committed theft offenses since that time. Counsel for appellant then asked Dr. Hrinko, "Are you aware of any change in Ms. Weber's economic circumstances subsequent to her husband's death?" Dr. Hrinko responded, I have been informed that — ." The prosecutor objected at this point, and the trial court sustained the objection. During a sidebar conference, the trial court cited two reasons for not allowing this testimony: (1) the inquiry was well beyond the scope of proper redirect examination; and (2) appellant's financial situation in 1996 was not relevant to the events that took place in 1990. At the time counsel for appellant proffered Dr. Hrinko's testimony to the court, the court added that the testimony would have also been inadmissible as double and triple hearsay. Counsel for appellant proffered the following:
 The witness would testify that as part of the background and investigative materials he was informed that as a result of Mr. Weber's death in 1996 that Ms. Weber received approximately one hundred sixty-two thousand dollars in insurance proceeds and annuity [sic] and an approximately monthly amount of eleven hundred four dollars. And that he was aware of the fact that misses [sic] Weber was convicted of one theft offense and had committed other thefts subsequent to the death of her husband.
The Ohio Supreme Court has held that a trial court possesses broad discretion as to the admissibility or exclusion of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, a reviewing court will not interfere. State v. Lowe (1994),69 Ohio St.3d 527; State v. Maurer (1984), 15 Ohio St.3d 239, 265. An abuse of discretion is more than an error of law or judgment, it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. State v. Keenan
(1998), 81 Ohio St.3d 133, 137; State v. Adams (1980), 62 Ohio St.2d 151,157-158. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. State ex rel. Duncanv. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728.
We find that the trial court did not abuse its discretion in prohibiting appellant's counsel from questioning Dr. Hrinko as to appellant's economic status after the death of her husband in 1996. Appellant's financial status in 1996 was not relevant to her thefts in 1990. To support her claim that she had an uncontrollable compulsion to steal in 1990, appellant sought to elicit Dr. Hrinko's testimony that she continued to commit thefts after 1996 despite receiving insurance money from her husband's death. However, six years elapsed between appellant's 1990 thefts and post-1996 thefts. This significant gap in time severely diminishes the relevancy between appellant's behavior in 1990 and her behavior after 1996. Further, the record reveals several intervening events between these two dates that changed the circumstances under which each of the thefts took place, including the death of appellant's husband, the filing of a deportation complaint against appellant, stricter deportation laws going into effect, and her 1993 felony theft conviction. Thus, there were numerous factors that could have contributed to appellant's thefts after 1996 that did not exist in 1990, and which severed any relation back to the 1990 theft.
Moreover, the testimony that appellant sought to elicit from Dr. Hrinko constituted hearsay pursuant to Evid.R. 801(C). When asked whether he was aware of appellant's post-1996 financial status, Hrinko responded, "I have been informed that — " Appellant's proffer indicated that Dr. Hrinko's only knowledge of appellant's financial status was gained as a result of "background and investigative materials." Thus, Dr. Hrinko had no personal knowledge of the facts. Further, there was no indication in the proffer or otherwise as to the nature or author of the "materials" or for what purposes the "materials" were produced. Appellant has offered no hearsay exception that would apply to this testimony.
Therefore, we find that the trial court did not abuse its discretion in prohibiting the testimony of Dr. Hrinko as it related to appellant's current financial status. Appellant's first assignment of error is overruled.
Appellant argues in her second assignment of error that she was denied effective assistance of counsel. In 1989, appellant was convicted twice of theft. In the present case, appellant was charged in 1990 for felony theft and possession of criminal tools, after which she accepted a plea bargain wherein she pled guilty to attempted theft, a first-degree misdemeanor. In 1993, appellant was charged with felony theft, which was enhanced by her prior theft convictions pursuant to R.C. 2913.02. Appellant entered a plea. She was thereafter notified that she was subject to deportation from the United States as a result of the felony conviction. The 1990 and 1993 cases formed the basis for the deportation complaint. Appellant's apparent reason for attacking the 1990 plea and conviction was in an attempt to obtain an acquittal, thereby allowing her to "unenhance" the 1993 felony conviction.
In order to substantiate a claim for ineffective assistance of counsel, the appellant is required to demonstrate that: (1) the performance of defense counsel was seriously flawed and deficient; and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052; State v. Brooks (1986),25 Ohio St.3d 144. In reviewing a claim of ineffective assistance of counsel, a strong presumption exists that the challenged action is a product of sound trial strategy.Strickland, at 694-695; State v. Thompson (1987), 33 Ohio St.3d 1,10-11. Thus, counsel's tactics, even if debatable, generally do not in and of themselves constitute lack of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45,49. Importantly, a reviewing court must evaluate trial counsel's performance on the facts of the particular case as of the time of counsel's conduct. Strickland, at 695.
The record does not reflect that trial counsel's performance was deficient. A review of the record reveals that appellant and prior counsel were fully aware that even an acquittal of the 1990 offense would have resulted in appellant's eventual deportation at some time in the future. The trial transcript demonstrates that trial counsel and appellant knew that even absent the 1990 misdemeanor plea, appellant still had two prior 1989 theft convictions that would have enhanced her 1993 theft offense. Appellant and trial counsel also knew that even if they could get an acquittal on the 1990 theft offense, which was one of the two predicate offenses named in the deportation complaint, one of the other theft convictions could have been eventually substituted in the complaint. The endeavor by trial counsel to attack the 1990 plea was clearly a tactical decision made in an attempt to at least delay the processing of the deportation complaint.
Further, the record also demonstrates that trial counsel's filing of the motion to withdraw appellant's 1990 plea was a strategic choice to which appellant fully agreed. In the affidavit attached to appellant's motion to withdraw her guilty plea, appellant averred that she was filing the motion because she did not know that her pleading guilty would subject her to deportation. Further, the memorandum in support made clear that the motion to withdraw her guilty pleas was being made in an attempt to avoid deportation. Appellant's affidavit attached to the motion stated that she had read the motion and that all of the facts and statements made therein were true. Appellant testified during the hearing on the motion to withdraw her guilty plea that she was willing to take the risk of going to jail upon retrial to avoid being deported. During the hearing on the motion, appellant's trial counsel also stated that the consequences and situation had been clearly explained to appellant but that it was her choice to face prosecution on the original charges.
Therefore, because the filing of the motion to withdraw appellant's pleas was clearly a tactical decision that appellant fully appreciated, appellant's second assignment of error is overruled.
Appellant argues in her third assignment of error that the jury's conclusion that she had failed to prove that she was not guilty by reason of insanity was against the manifest weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence to support one side of the issue rather than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Reviewing the entire record, the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,
quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of fact, and, consequently, the jury may give more weight to lay witnesses than to experts if it so chooses. State v. Thomas
(1982), 70 Ohio St.2d 79, 80. A trial court's judgment as to insanity, will only be reversed where overwhelming and uncontradicted evidence leads to a contrary conclusion. Statev. Brown (1983), 5 Ohio St.3d 133; State v. Conn (1982),13 Ohio App.3d 251.
Appellant argues that the jury failed to consider her experts' testimony that she was legally insane at the time of the theft. Appellant also claims that the state presented no evidence to rebut such expert testimony.
In support of her insanity defense, appellant presented the testimony of Drs. Thomas Clifford and Daniel Hrinko. Dr. Clifford testified that based upon a three-hour interview of appellant and an examination of her history, appellant was not responsible for the theft because she was unable to refrain from doing the act as a result of kleptomania. Dr. Clifford stated that he believed appellant was experiencing a sense of strong commitment to help her family in Poland and experiencing a sense of frustration, helplessness, and depression in her efforts to accomplish that. Dr. Clifford also testified that appellant suffered from an impulse control disorder and was not stealing the items for their monetary value or personal use. He also stated that her being nonselective and random about what she was stealing would be consistent with his diagnosis of kleptomania.
Dr. Hrinko testified that he believed that appellant was suffering from a mental illness that prevented her from refraining from the acts with which she had been charged. Dr. Hrinko stated that based upon a one and one-quarter-hour interview, he believed "obsessions and compulsions" motivated appellant to steal the items so that she could fulfill her promise of sending items back to Poland. Dr. Hrinko also testified that with mental illness items are typically taken without preplan, without regard for personal use, and without regard for monetary value. He stated that he believed appellant suffered from a mental disease that created strong urges and impulses which she finds irresistible at times.
Although appellant argues that the state offered no evidence to rebut either of the expert witnesses, the record reveals much evidence and testimony that may have caused the jury to disbelieve the diagnoses of Drs. Clifford and Hrinko. Both doctors relied upon personal interviews of appellant in reaching their conclusions. However, appellant's version of the facts as told to the doctors during the interviews differed materially from the testimony of security officer Engle as to what actually happened, and the jury could have used such discrepancies to reject the testimony and diagnoses of the doctors.
In diagnosing appellant as suffering from kleptomania, Dr. Clifford stated that lack of preplanning was one of the elements of kleptomania. During the interview appellant told Dr. Clifford that she went to Lazarus to just "look around." However, during her interview appellant did not divulge to Dr. Clifford that she had been wearing an altered booster girdle. Dr. Clifford admitted that her wearing such an item would be contradictory to her statement that she went to Lazarus because she just wanted to "look around." She also told Dr. Clifford that she took one item, took it to the fitting room, and then went back and did the same thing repeatedly. However, Engle testified that appellant took a number of items into the fitting room, concealed many of them in her girdle, returned a few of the items to the sales floor, and then left. Appellant further told Dr. Clifford that when she realized what she was doing, she felt an incredible urge to escape. However, there was evidence that prior to stealing the items from the juniors department, she had stolen items from the jewelry and purse departments earlier in the day, contradicting her statement that she felt an incredible urge to escape after stealing.
Further, although an element of Dr. Clifford's diagnosis for kleptomania was that the stolen items were random, of no monetary value, and not for personal use, Dr. Clifford never asked appellant whom the items were for, and he did not know the specific items she had stolen besides "some blouses." Dr. Clifford was aware that appellant had a young daughter, but appellant did not tell him that she had stolen items from the juniors department and stationary items imprinted with the "New Kids on the Block" logo. The jury could have reasonably believed that the stationary and items from the juniors department were not random but, rather, were for appellant's eleven-year-old daughter. Further, Dr. Clifford stated that the items she was stealing were only basic, subsistence-level items. He was unaware she had stolen purses and earrings. The two stolen purses were a Coach purse, valued at $94.99, and a Liz Claiborne purse, valued at $60.
There was also evidence and testimony that conflicted with Dr. Hrinko's diagnosis. Dr. Hrinko testified that random selection of items that were not useful or of monetary value would be consistent with his diagnosis of an obsessive-compulsive illness. However, as stated previously, the jury could have reasonably believed that the items taken by appellant were not random. Appellant had an eleven-year-old daughter, and appellant stole items from the juniors department and items imprinted with the "New Kids on the Block" logo. Appellant also stole earrings and two expensive purses. Further, Dr. Hrinko testified that a girdle worn and altered in order to conceal stolen goods would not be consistent with his understanding of the obsessive-compulsive illness of appellant.
In addition, Dr. Clifford stated that his diagnosis of impulse control disorder was different than obsessive compulsion, which was Dr. Hrinko's diagnosis. The jury could have discounted each of the experts' testimony based on their conflicting diagnoses.
The trial court chose to believe the state's evidence rather than appellant's. The state presented substantial evidence upon which the court could reasonably conclude that appellant's insanity defense was not proven by a preponderance of the evidence. Thus, this court will not reverse the conviction as being against the manifest weight of the evidence. SeeState v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. Upon review of the evidence and the record before us, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Therefore, appellant's third assignment of error is overruled.
Appellant argues in her fourth assignment of error that the evidence at trial was insufficient to support her conviction for use of a criminal tool. In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
Jenks, paragraph two of the syllabus.
A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence that goes to all the essential elements of the case.Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988),39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230.
R.C. 2923.24 provides, in pertinent part:
 (A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.
 (B) Each of the following constitutes prima-facie evidence of criminal purpose:
* * *
 (2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;
 (3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.
Thus, the elements of the crime of possessing criminal tools are: (1) to have possession or control of (2) any substance, device, instrument, or article (3) for a criminal use. The state must prove that the appellant intended to use the girdle "burglariously." See State v. Cimpritz (1952), 93 Ohio App. 407; see, also, State v. Fields (Oct. 23, 1980), Franklin App. No. 79AP-905, unreported (1980 Opinions 3356). Thus, the focus is on the intended use or conduct.
In the case at bar, Engle, the Lazarus security guard, testified that from underneath the partition of the fitting room stall, she observed appellant shoving merchandise up her skirt and inside her girdle. After confiscating the girdle from appellant, Engle noticed that the leg portion of the girdle was cut and the side had been altered with a slit, into which she had seen the merchandise being shoved. Engle testified that she believed the cuts were intentional rather than as a result of an accidental rip. Engle further stated that girdles are altered in this manner to allow the thief to conceal the item close to their body, which may distract a store's anti-theft sensor.
This testimony supports the conclusion that appellant had possession of the girdle with the purpose to use it in a theft offense. This court has previously found a girdle worn and used in a theft offense to be a criminal tool pursuant to R.C.2923.24. See State v. Lee (1990), 66 Ohio App.3d 773. Based on the record before this court, we find that there was sufficient evidence to support the jury's finding that the girdle that appellant was wearing was used by her for a criminal purpose,i.e., to commit a theft offense. See State v. Ford (1986),31 Ohio App.3d 99. Therefore, appellant's fourth assignment of error is overruled.
Appellant argues in her fifth assignment of error that the trial court abused its discretion when it sentenced appellant to a term of incarceration greater than the one imposed after her plea in 1990. In 1990, appellant plead guilty to attempted theft and received a six-month suspended sentence with two-years probation. In 1998, defendant was found guilty of theft and possession of criminal tools and was sentenced to two concurrent one and one-half-year sentences for the charges and received a $5,000 fine.
A defendant may not be sentenced more severely simply because she exercised her right to trial. Columbus v. Bee (1979),67 Ohio App.2d 65. In Alabama v. Smith (1989), 490 U.S. 794,109 S.Ct. 2201, the Court held that where a trial judge imposes a more severe sentence after retrial than that which was previously imposed upon a guilty plea, there is no presumption of vindictiveness except under circumstances in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the trial judge. Smith, at 799-801. Where there is no such likelihood, the burden remains upon the defendant to prove actual vindictiveness. Smith, at 799-800. The Court observed that in such cases the increased sentence is not likely attributable to vindictiveness on the part of the sentencing judge because, even when the same judge imposes both sentences, the judge has considerably more information available after a trial than after a plea and may gather "a fuller appreciation of the nature and extent of the crimes charged" during the course of the trial. Smith, at 801.
In the present case, there is no reasonable likelihood of actual vindictiveness on the part of the trial judge and, consequently, appellant bears the burden of proving actual vindictiveness. The record, however, fails to substantiate her claim that the sentence imposed resulted from the court's intention to penalize her for exercising her right to trial after the vacation of her guilty plea. As recognized inSmith, the information a trial court gains in the course of proof at trial may influence the court in sentencing. Here, the court knew much more about the nature of the crime after the trial, and it gave the court a better insight into appellant's prospects for rehabilitation. This fuller revelation of the circumstances surrounding the crime may have influenced the trial court in its sentencing of appellant.
Further, other legitimate reasons exist for the disparate sentences imposed on appellant in 1990 and in 1998, the most apparent of which is that in 1990 appellant was sentenced on different offenses than in 1998. In 1990, appellant accepted the terms of a plea agreement and entered a guilty plea for a first-degree misdemeanor, attempted theft. In 1998, however, appellant was found guilty of two more serious offenses: theft, a third-degree felony; and possession of criminal tools, a fourth-degree felony. Thus, appellant's more lenient 1990 sentence reflects the fact that she was sentenced on fewer, less serious offenses than in 1998.
Finally, the trial court could have imposed a harsher sentence after the 1998 conviction due to the intervening convictions for theft between the 1990 plea and the 1998 trial. In Wasman v. United States (1984), 468 U.S. 559,104 S.Ct. 3217, the United States Supreme Court held that where a defendant is retried and convicted following a successful appeal, a sentencing authority may consider conduct or events that occurred subsequent to the original sentencing proceedings in imposing an increased sentence upon retrial. Appellant cites no authority to the contrary on this issue.
Based on the foregoing, we conclude that appellant has failed to demonstrate that the trial court abused its discretion in imposing a harsher sentence on her in 1998 than in 1990. Therefore, appellant's fifth assignment of error is overruled.
Accordingly, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and PETREE, JJ., concur.