THE STATE OF OHIO, APPELLEE, *v.* STATEN, APPELLANT.

(No. 68-681—Decided April 9, 1969.)

*Mr. Daniel T. Spitler*, prosecuting attorney, for appellee.

*Mr. John C. Halleck*, for appellant.

TAFT, C. J.  This appeal is based upon the contention that the proper test was not used by the three-judge Common Pleas Court in determining whether defendant should be found not guilty by reason of insanity.

The argument of defendant's counsel to the trial court represented in large part an attack upon the M'Naghten test for determining the defense of insanity.

After hearing that argument and the argument of the prosecutor, the presiding judge at the court stated:

"At this time, I will state that the court feels that the McNaughten [*sic*] rule is the law of Ohio."

There is nothing further in the record to indicate what test the trial court used in determining that defendant should not be acquitted by reason of insanity.

In *M'Naghten's case* (1843), 4 St. Tr. N. S. 847, 8 Eng. Rep. 718, 722, it was stated that:

"* * * jurors ought to be told in all cases that every man is to be presumed to be sane, and to possess a suf-ficient degree of reason to be responsible for his crimes, until the contrary be proved to their satisfaction; and that to establish a defense on the ground of insanity, it must be clearly proved that, at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong. The mode of putting the latter part of the question to the jury * * * has generally been, whether the accused at the time of doing the act knew the difference between right and wrong * * * in respect to the very act with which he is charged. * * *"

It has been stated that Ohio, along with most juris-dictions, follows the so-called M'Naghten rule as the "sole test" of criminal responsibility.  Annotation, Modern

Status of the M'Naghten "right-and-wrong" test of Criminal Responsibility, 45 A. L. R. 2d 1447, 1453. The only authority cited for this statement is *State* v. *Ross* (Cuyahoga County 1952), 92 Ohio App. 29, 108 N. E. 2d 77 (which followed *State* v. *Cumberworth* [Cuyahoga County 1942], 69 Ohio App. 239, 43 N. E. 2d 510). The dismissal of the *Ross* case by this court on jurisdictional grounds did not represent an approval of the statements of law in the opinion of the Court of Appeals for Cuyahoga County in that case. See also *State* v. *Schaffer* (Lawrence County 1960), 113 Ohio App. 125, 177 N. E. 2d 534, which purports to follow the *Ross* and *Cumberworth* cases but does not notice any decisions of this court; 15 Ohio Jurisprudence 2d 277, Section 40. But see Id., 274, Section 37; Kolb, Criminal Defense of Insanity, XLI Ohio Bar 1155 (1968).

In determining what unsoundness of mind may excuse an accused from criminal responsibility for his acts, this court has almost always, both before and after the *Ross* case, been more liberal to those accused of crime than were the judges who promulgated the so-called M'Naghten rule. Furthermore, in giving the reasons for its determinations, generally this court has not even mentioned the M'Naghten rule, although it has always stated the substance of that rule as *a part* of its own test for determining whether an accused should be relieved of criminal responsibility for an act.

In *Clark* v. *State* (1843), 12 Ohio 483 (decided in the same year as *M'Naghten's case*), at page 494, there appears "portions of the charge to the jury, by Judge Birchard," which were "reduced to writing, and approved by the other [3] judges." Those portions read in part:

"* * * *Purposely* implies an act of the will; an intention; a design to do the act. It presupposes the free agency of the actor. *Deliberation* and *premeditation* require action of the mind. They are operations of the intellectual faculties, and require an exercise of reason, reflection, judgment and decision, and can not happen in any case where the faculties of the mind are deranged, destroyed, or do not exist. The crime of murder in the first degree can, therefore, only be perpetrated by a free agent, capable of acting or of abstaining from action—free to embrace the

right and to reject the wrong. He must have a sound intellect, capable of reason, reflection, premeditation, and under the control of the will."

In *Farrer* v. *State* (1853), 2 Ohio St. 54, it is said in the opinion by Corwin, J., at page 70:

"* * * The power or self-control—'free agency'—is said to be quite as essential to criminal accountability as the power to distinguish between right and wrong. And I have no doubt that every correct definition of sanity, either expressly or by necessary construction, must suppose freedom of will, to avoid a wrong, no less than the power to distinguish between the wrong and the right. * * *"

In those early cases, it is quite apparent that this court held that an accused was not responsible for a criminal act by reason of insanity, if either (1) at the time of the act he did not know what he was doing, or (2) at that time he did not know that that act was wrong, or (3) at that time he could not refrain from doing that act.

Unfortunately, paragraph eight of the syllabus of *Loeffner* v. *State* (1857), 10 Ohio St. 598, does not mention the inability of a defendant to refrain from doing a criminal act as excusing him from criminal responsibility therefor. However, subsequently, in *Blackburn* v. *State* (1872), 23 Ohio St. 146, it was contended (page 155) that, "no one is criminally responsible for an act which he had no power whatever to refrain from doing." In answer to that contention it is stated in the opinion by Welch, J., at page 164:

"* * * The form of question submitted to the jury is substantially the same as laid down in *Clark's case*, 12 Ohio 494 (note), and seems to us to embody the true rule, namely: Was the accused a free agent in forming the purpose to kill? Was he at the time capable of judging whether *that act* was right or wrong? And did he know at the time that it was an offense against the laws of God and man?"

Although we have some doubt whether this statement, or its counterpart in paragraph four of the syllabus of the case, could justify the conclusion that the inability of an accused to refrain from doing a criminal act would excuse him from criminal responsibility for doing it, the charge of

Birchard, J., in *State* v. *Clark, supra* (12 Ohio 494), which was expressly approved by Judge Welch in his opinion in the *Blackburn case*, certainly would so excuse him. As hereinbefore pointed out, that charge stated that defendant could not be held criminally responsible for his act if he established that he was not a "free agent, capable of acting or abstaining from action—free to embrace the right and to reject the wrong."

Subsequent decisions of this court have made it clear that an accused will have no criminal responsibilty for an act if he had no ability to refrain from doing that act.[1] Thus, paragraph 15 of the syllabus of *State* v. *Frohner* (1948), 150 Ohio St. 53, 80 N. E. 2d 868, and paragraph four of the syllabus of *State* v. *Stewart* (1964), 176 Ohio St. 156, 198 N. E. 2d 439, read:

"A person accused of a crime who knows and recognizes the difference between right and wrong in respect to the crime with which he is charged and has ability to choose the right and abjure the wrong is legally sane."

Defendant contends that one accused of criminal conduct should not be responsible for such criminal conduct if, at the time of such conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.[2]

This would represent a correct statement of the law of Ohio, as previously declared in our decisions, if the words "does not have the" were used instead of the words "lacks

---

[1] Some criticisms of the Ohio rule for determining criminal responsibility apparently result from a failure to recognize this part of the Ohio rule. See, for example, *State* v. *Colby* (Cuyahoga Common Pleas 1966), 6 Ohio Misc. 19. Also, the absence of this part of the Ohio rule from the M'Naghten rule as generally applied in other jurisdictions is probably responsible for much of the attack upon that rule in those jurisdictions. See, for example, *Dusky* v. *United States* (C. A. 8, 1961), 295 F. 2d 743, 759.

[2] This is apparently based upon the first paragraph of the rule stated in Section 4.01 of the Model Penal Code, proposed by the American Law Institute. *United States* v. *Freeman* (C. A. 2, 1966), 357 F. 2d 606, 622. The defendant in this case ignores the second paragraph of that rule which states that "the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

substantial," and if the word "know" was used instead of the word "appreciate."[3]

In other words, defendant asks this court to adopt a rule that would eliminate criminal responsibility for an act of an accused, even though the accused knew that the act was wrong and had the ability to refrain from doing it, if either the capacity of the accused to know the wrongfulness of the act or his capacity to refrain from doing the act had been substantially impaired.

It may be observed that the rule contended for by defendant represents a substantial retreat from the so-called Durham rule, under which an accused could be relieved of criminal responsibility where his criminal act was merely a product of his mental abnormality. Under that rule, it was apparently not even necessary to establish that such abnormality was a proximate or substantial cause of the criminal act. See *Durham* v. *United States* (C. A. D. C. 1954), 214 F. 2d 862.

The so-called Durham rule and much of the confusion with regard to whether an accused should be excused from responsibility for criminal conduct on account of mental abnormalities have resulted from a failure to consider why an accused should be so excused. The defense accorded an accused by reason of his mental abnormalities has been labeled as the defense of insanity. Insanity encompasses a great many mental abnormalities. Those who criticize the so-called defense of insanity in criminal cases in Ohio usually do so merely because that defense does not encompass all the mental abnormalities which medical science recognizes as encompassed within the term "insanity." Such criticism fails to consider the reasons why there should be any defense of insanity in criminal cases.

One of the justifications for criminal sanctions is that they provide the public with protection against those addicted to criminal acts. Those who question whether there should be any defense of insanity in criminal cases do so because they believe that that defense deprives the

---

[3]Use of the indefinite word "appreciate" instead of the definite word "know" would not affect the statement of the Ohio rule except for its tendency to make it less understandable to a jury. See *Wion* v. *United States* (C. A. 10, 1963), 325 F. 2d 420, 427, 430.

public of that protection. In our opinion, this apprehension is not justified in Ohio.

Section 2943.03, Revised Code, provides in part:

"A defendant who does not plead not guilty by reason of insanity is conclusively presumed to have been sane at the time of the commission of the offense charged. The court may, for good cause shown, allow a change of plea at any time before the commencement of the trial."

Section 2945.39, Revised Code, provides in part:

"When a defendant pleads 'not guilty by reason of insanity,' and is acquitted on the sole ground of his insanity, such fact shall be found by the jury in its verdict, and it is presumed that such insanity continues. In such case the court shall forthwith direct that the accused be confined in the Lima State Hospital, and shall forthwith commit him to such hospital, and *such person shall not be released from confinement in said hospital until* the judge of the Court of Common Pleas of Allen County, the Superintendent of the Lima State Hospital, an alienist to be designated by said judge and superintendent, or a majority of them, after notice and hearing, find and *determine* that said defendant's sanity has been restored, and *that his release will not be dangerous.* If said release is granted, it may be final or on condition, or such person may be released on parole, and thereafter, in the discretion of said judge or superintendent, said defendant may be returned to said hospital. * * * This section does not deprive said defendant of his constitutional privilege to the writ of habeas corpus." (Emphasis added.)

It is apparent therefore that Ohio provides its public with adequate protection against those who are found not guilty by reason of insanity. But see *In re Remus* (1928), 119 Ohio St. 166, 162 N. E. 740.

Other reasons for criminal sanctions against a convicted defendant are that he should be punished because his punishment will (1) tend to deter him from further criminal activities and (2) will deter others from such criminal activities.

This court, by its pronouncements, has apparently concluded that a person should not be punished for what he does, if, by reason of mental disease, he either does not

know that what he did was wrong or could not prevent himself from doing it; and that punishing such an irresponsible individual will deter neither him nor others from doing what he did.

Although we have some doubt as to whether such an insane defendant's punishment would not have a deterrent effect on others, we cannot escape the conclusion that one, who does not know that his action is wrong or does not have the capacity to avoid such action, is not a proper subject for punishment. See *United States* v. *Currens* (C. A. 3, 1961), 290 F. 2d 751. To punish such an individual would be like inflicting punishment upon an inanimate object, such as a machine, because it had, without any intelligent human intervention, caused some damage.

However, if an accused knows that his criminal act is wrong and has the ability to refrain from that act, we see no reason for not punishing him for doing that act, even where his capacity for knowing the wrongfulness of that act or his capacity to refrain therefrom has been diminished. Such diminished capacity may represent a reason for a diminished punishment but not for an absence of any punishment. In such an event, we believe that punishment would have a deterrent effect on others, especially those who might be inclined to feign such a diminished capacity.

In our opinion, therefore, the so-called defense of insanity, as recognized in Ohio in criminal cases, should not be criticized because that defense cannot be established by proving any one or more of the many mental abnormalities that may be included within "insanity," as that term is recognized by the medical profession.

Our conclusion is that, where the defense of insanity[*] has been raised by a plea in a criminal prosecution, that defense and the burden of proof with respect thereto

---

[*]Where the question is whether an accused is sufficiently sane so that he may be tried (see Sections 2945.37 and 2945.38, Revised Code), the legal test of insanity is different from the legal test of insanity as a defense. Thus, insanity will not prevent the trial of an accused where he "is of sufficient soundness of mind to understand and appreciate the nature of the charge against him, to comprehend his situation, and * * * is mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense." *State, ex rel. Town-*

should be defined, in language that a jury may understand,[5] as follows:

> In order to establish the defense of insanity, the accused must establish by a preponderance of the evidence[6] that disease or other defect of his mind had so impaired his reason[7] that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong[8] or he did not have the ability to refrain from doing that act.

As hereinbefore stated, there is little in the record to indicate whether the Common Pleas Court followed the correct rule with regard to the defense of insanity as that rule is stated in paragraph 15 of the syllabus of *State* v. *Frohner, supra* (150 Ohio St. 53), and paragraph four of

---

send, v. *Bushong* (1946), 146 Ohio St. 271, 274, 65 N. E. 2d 407; *Krauter* v. *Maxwell* (1965), 3 Ohio St. 2d 142, 144.

[5]Considerable confusion has been caused by the giving of charges which are too favorable to the accused, such as that in *State* v. *Keaton* (1964), 9 Ohio App. 2d 139, 223 N. E. 2d 631, and especially by their adoption as part of models for use in instructing juries. See 4 OJI Criminal (Ohio Jury Instructions 1967) 410.51(b).

In *Pope* v. *United States*, 372 F. 2d 710, 735, it is stated "that the exact wording of the charge and the actual name of the test are comparatively unimportant and may well be little more than an indulgence in semantics." If the charge is substantially correct, this may often be true, but we still believe that it is desirable for trial courts to avoid verbosity in charges of this kind and also to avoid such uncommon words as "abjure." Furthermore, although some of our decisions have approved charges mentioning a presumption of sanity, we are of the opinion that mention of such a presumption is unfortunate. See *Kelch* v. *State* (1896), 55 Ohio St. 146, 45 N. E. 6. Cf. *Carson* v. *Metropolitan Life Ins. Co.* (1956), 165 Ohio St. 238, 135 N. E. 2d 259.

[6]*Kelch* v. *State, supra* (55 Ohio St. 146); *Bergin* v. *State* (1876), 31 Ohio St. 111.

[7]The provisions with respect to "disease or some defect of his mind" which are not mentioned in the *Frohner* or *Stewart* syllabi may be desirable in order to avoid extension of the insanity defense to situations where it should not be applied, as where the defect of mind that impaired the reason of the accused was caused by voluntary intoxication. *Rucker* v. *State* (1928), 119 Ohio St. 189, 162 N. E. 802.

[8]As hereinbefore mentioned, insanity is a defense where the accused did not know what he was doing at the time of his criminal act. In that event, the accused would necessarily not know that what he was doing was wrong. Since that would excuse him from criminal respon-

the syllabus of *State* v. *Stewart, supra* (176 Ohio St. 156). In such an instance, we might properly presume that the court used the words "McNaughten Rule" in a colloquial sense as referring to the holdings of this court in those paragraphs of its syllabi. See *Krauter* v. *Maxwell* (1965), 3 Ohio St. 2d 142, 144, 209 N. E. 2d 571, where the opinion so used the words "M'Naghten's Test." The words of those paragraphs of the syllabi of the *Frohner* and *Stewart* cases had been used in the prosecutor's argument in referring to the test for insanity, and defendant's counsel had argued for a test more liberal to an accused than that stated in those paragraphs.

Since this is a death case and the triers of the fact are still available, the judgment of the Court of Appeals is reversed and the cause is remanded to the Common Pleas Court, with the following instructions:

(1) To adhere to their previous judgment, either if the rule applied by them was that stated in paragraph four of the syllabus of *State* v. *Stewart, supra* (176 Ohio St. 156), or if they would have reached the same conclusion that they did under the rule with respect to the defense of insanity as stated in this opinion, and (2) if not, to render such other judgment as they would have rendered if they had followed that rule.

*Judgment reversed.*

MATTHIAS, O'NEILL, SCHNEIDER, KERNS and DUNCAN, JJ., concur.

ZIMMERMAN, J., not participating.

KERNS, J., of the Second Appellate District, sitting for HERBERT, J.

---

sibility, it is not necessary to further tell the jury that he would be excused if he did not know what he was doing.

Sometimes, where a defendant lacks the ability to refrain from doing a criminal act, it is stated that his doing it is the result of an irresistible impulse. Such a statement limits the defense of lack of capacity to refrain from doing the act to sudden occurrences; it also suggests that there may be a defense where a defendant momentarily becomes angry and loses control over himself. Fortunately, our court has never used the term "irresistible impulse."