THE STATE OF OHIO, APPELLEE, *v.* ANDERS, APPELLANT.

(No. 71-484—Decided January 12, 1972.)

2

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Leonard Kirschner,* for appellee.

*Mr. Burton R. Signer, Mr. Robert William Ent* and *Mr. Arthur Clark, Jr.,* for appellant.

O'NEILL, C. J. Appellant contends that the trial judge erred in refusing to instruct the jury according to the tests of insanity specified in *State* v. *Staten* (1969), 18 Ohio St. 2d 13, 247 N. E. 2d 293. Appellee contends that the precise language of the charge stated in *Staten* is not a mandatory requirement. Alternatively, appellee argues that counsel did not take exception to the court's charge "at a time when * * * the error could have been corrected by the court."

Appellee's alternative contention is not supported by the record. The record discloses that after the jury was instructed, but before it retired, the trial judge inquired of counsel whether there were "any additions, corrections [or] suggestions" which counsel desired "to call to the court's attention." Counsel for appellant indicated that there was, and a discussion took place off the record.

Thereafter, the jury retired and the trial judge stated for the record: "* * * at that point where * * * the court

solicited from counsel any further comments or suggestions, counsel for the defense requested the court to instruct the jury as to the test of insanity as set forth in'' *State* v. *Staten*. This request was refused and exceptions noted. Thus, the *Staten* case was called to the trial judge's attention at the proper time.

The trial judge instructed the jury on the defense of insanity as follows:

"One, was the defendant in this case a free agent forming the purpose to commit the crime charged, if she did form such a purpose;

"Two, was she at the time of the act complained of capable of judging whether the act was right or wrong;

"Three, if she did commit a criminal act, did she know at that time that such act was an offense against the laws of God and man.

"These items * * * constitute the test of legal insanity, which will excuse a person from criminal responsibility. If the defendant committed the crime and was at that time a free agent in forming the purpose to commit it and capable of judging whether the act was right or wrong and knew that the act was an offense against the laws of God and man, then she was legally sane.

"On the other hand, if she was either not a free agent or was not capable of judging whether the act was right or wrong or did not know that the act was an offense against the laws of God and man, then she was legally insane and would be entitled to be acquitted on the grounds of insanity."

This instruction is modeled after the instructions given in *Clark* v. *State* (1843), 12 Ohio 483; *Loeffner* v. *State* (1857), 10 Ohio St. 598; and *Blackburn* v. *State* (1872), 23 Ohio St. 146. However, the eighth paragraph of the syllabus in *Loeffner* was disapproved in *Staten*, because the instruction did "not mention the inability of a defendant to refrain from doing a criminal act as excusing him from criminal responsibility therefor." *Blackburn*, while not overruled, was questioned in *Staten* because we doubted

that the literal language of the charge "could justify the conclusion that the inability of an accused to refrain from doing a criminal act would excuse him from criminal responsibility for doing it." Similarly, *Clark* was followed, not for the literal language in which the test of insanity was given, but because the charge in its entirety would excuse a defendant from criminal responsibility if he did not have the ability to refrain from doing the act.

While the principle involved in *Clark* retains its validity, the literal language of the charge does not. The same is true of *Blackburn*. *Staten* makes it clear that the inability of the accused to refrain from doing a criminal act is a necessary part of the test of insanity in Ohio.' Thus, any charge which does not contain language from which the jury may conclude that disease or other defect of the defendant's mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act, is erroneous.

Nowhere in the charge given is there any mention that the inability of the accused to refrain from doing the act would excuse her from criminal responsibility.[2] On the other hand, there is testimony which, if believed by the jury, shows that appellant did not have the capacity to conform her conduct to the requirements of the law and

---

[1]In *Staten,* this court reviewed its prior cases involving the defense of insanity, and clearly repudiated the notion that the inability of one accused of a crime to refrain from doing a criminal act is not a part of the test of insanity in Ohio. This concept, in one form or another, is expressed in the opinion no less than 12 times.

[2]See Ohio Jury Instructions, 4 O. J. I. Criminal 411.51(c), wherein the recommended charge to the jury is:

"In order to establish the defense of insanity, the accused must establish by a preponderance of the evidence that a disease or other defect of his mind had so impaired his reason that, at the time of the criminal act with which he is charged, either he did not know that such act was wrong or he did not have the ability to refrain from doing that act." This language is identical with the jury instruction on page 21 in the *Staten* opinion.

that she did not have the ability to refrain from doing the act.[3]

Thus, on the basis of this testimony and the principles expressed in *Staten,* the conclusion that the charge given was erroneous is compelled.

For the above reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

SCHNEIDER, HERBERT, COLE, CORRIGAN, STERN and LEACH, JJ., concur.

COLE, J., of the Third Appellate District, sitting for DUNCAN, J. JUDGE COLE of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE DUNCAN and JUDGE COLE did so and heard and considered this cause prior to the resignation of JUSTICE DUNCAN on November 28, 1971.

---

[3]Three expert witnesses testified at the trial. Each was asked whether or not as a result of mental disease or defect, Brenda did not have the capacity either to know the wrongfulness of her conduct or to conform her conduct to the requirements of the law. They answered, respectively, "the latter part would fit exactly"; "she was not able to control her conduct in [that] manner"; and "probably not."

They were also asked "whether or not disease or other defect of Brenda's mind had so impaired her reason that at the time of the criminal act * * * either she did not know that such act was wrong or she did not have the ability to refrain from doing that act." They answered, respectively, "she was unable to refrain"; "she was to a great extent impaired in using the faculties she had to control her behavior"; and "she probably had a diminished capacity * * * to act in a free and voluntary fashion." (See page 20 in the *Staten* opinion regarding diminished capacity.)