DECISION AND JOURNAL ENTRY
Appellant, Shane Partin, appeals his conviction in the Summit County Court of Common Pleas. We affirm.
 I.
On January 31, 1999, Mr. Partin was working at the Cathedral Buffet and Banquet Center ("Cathedral Buffet"). He was carrying a knife, which he apparently intended to show to several of his fellow workers who collected knives and the like. Cassandra Blondheim was also working at the Cathedral Buffet that day. Apparently, Mr. Partin knew Ms. Blondheim and had made advances to her in the past. In the late afternoon of January 31, 1999, Mr. Partin approached Ms. Blondheim while they were both working at the Cathedral Buffet. When she refused to respond to him and while her back was turned to Mr. Partin, he drew the knife which he was carrying and stabbed Ms. Blondheim repeatedly. Mr. Partin first stabbed Ms. Blondheim in the chest and then in the neck. Ms. Blondheim called out for help and in pain as Mr. Partin was stabbing her. Other persons present at the Cathedral Buffet rushed to the scene.
After stabbing Ms. Blondheim, Mr. Partin momentarily brandished the knife in his outstretched hand, warning away those who had gathered in an effort to help Ms. Blondheim or discover the source of the screaming. Mr. Partin then fled, racing into the parking lot, as a crowd gathered at the scene.
Officers Henderson and Stuhldreher of the Cuyahoga Falls Police Department responded to the report of a stabbing at the Cathedral Buffet. Upon arriving, they learned that Mr. Partin had fled into the parking lot. Officer Stuhldreher proceeded into the parking lot where, after a short confrontation, he placed Mr. Partin in custody. Later that day, Ms. Blondheim passed away due to the stab wounds inflicted by Mr. Partin.
On March 2, 1999, Mr. Partin was indicted by the Summit County Grand Jury for murder, in violation of R.C. 2903.02. A jury trial was held, commencing on September 13, 1999 and concluding on September 17, 1999. In a verdict journalized on September 21, 1999, Mr. Partin was found guilty of the murder of Ms. Blondheim. He was sentenced accordingly. This appeal followed.
 II.
Mr. Partin asserts three assignments of error. We will address each in turn.
A.
First Assignment of Error
 The trial court erred in preventing Dr. Kasper and Dr. Stafford from testifying about Appellant Partin's mental capacity and mental status. The insanity standard has become more restrictive since the ruling in State v. Wilcox and therefore, pursuant to the Fourteenth Amendment right to due process, evidence of Appellant Partin's diminished capacity should have been admitted as a separate defense.
 Mr. Partin argues that the Ohio Supreme Court's pronouncement in State v. Wilcox (1982), 70 Ohio St.2d 182, paragraph two of the syllabus, is no longer controlling law because of the changes made to the insanity defense made by R.C. 2901.01(A)(14) after the decision was rendered. Moreover, he asserts that because the irresistible impulse portion of the insanity defense was not included in the definition of "not guilty by reason of insanity" in R.C. 2901.01(A)(14), one must now be allowed to present evidence of diminished capacity as evidence that one did not act purposefully which is the culpable mental state required to convict one of murder. We disagree.
"Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo."Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107,108.
The test for legal insanity at the time of Wilcox was set forth in State v. Staten (1969), 18 Ohio St.2d 13, paragraph one of the syllabus:
 One accused of criminal conduct is not responsible for such criminal conduct if, at the time of such conduct, as a result of mental disease or defect, he does not have the capacity either to know the wrongfulness of his conduct or to conform his conduct to the requirements of law.
 Based on its analysis of this test in conjunction with the benefits and uncertainties of adding an additional defense of diminished capacity, the Ohio Supreme Court concluded that "[a] defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that the defendant lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." Wilcox, 70 Ohio St.2d at paragraph two of the syllabus.
In 1990, R.C. 2901.01 was amended to indicate that a person is "not guilty by reason of insanity" "only if he proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, he did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts." (R.C. 2901.01 has been subsequently amended to change "he" and "his" to gender neutral terms.)
In the instant case, Mr. Partin avers that the statutory change in the definition of "not guilty by reason of insanity" has removed the second way in which one may be found not guilty by reason of insanity. Namely, he avers that the irresistible impulse portion of the Staten test, where one is unable "to conform his conduct to the requirements of law," has been statutorily removed, narrowing the test and requiring the creation of the diminished capacity defense. However, both this court and the Ohio Supreme Court have revisited the applicability of the diminished capacity test in Ohio since the 1990 amendment to R.C.2901.01 and have rejected this defense. See, e.g., State v. Mitts
(1998), 81 Ohio St.3d 223, 227 ("Moreover, the trial court could have excluded the testimony because, except in the mitigation phase, `a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that, due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime.'" (Citation omitted.));State v. McCray (1995), 103 Ohio App.3d 109, 118 ("Ohio does not recognize a partial defense of diminished capacity; a defendant may not offer psychiatric testimony, unrelated to the insanity defense, to show that the defendant lacked the mental capacity to form the specific mental state required for conviction of a crime."). Hence, we are bound by both our own precedent and that of the Ohio Supreme Court to the holding in Wilcox. Moreover, the Ohio Supreme Court's analysis in Wilcox is equally applicable to the current statute. See Wilcox, 70 Ohio St.2d at 190-94. Accordingly, Mr. Partin's first assignment of error is overruled.
B.
Second Assignment of Error
 The trial court erred in permitting the State to ask Appellant Partin a question about a statement which was allegedly made to a witness who had not been properly excluded, which violated both Evid.R. 615 and Crim.R. 16. This prejudiced Appellant Partin because it made the question impossible to defend and denied him his Sixth Amendment right to a fair trial.
 Mr. Partin argues that it was improper for the prosecution not to list Ms. Ruth Frederick as a witness and then, while she was present in the courtroom, ask Mr. Partin about a statement she apparently asserts that he made to her. Essentially, Mr. Partin asserts that the prosecution should have listed Ms. Frederick as a witness so that Mr. Partin could move to exclude her from the courtroom, so as to prevent her from hearing testimony in the case, if the prosecution wished to inquire into statements made to her by Mr. Partin, if Mr. Partin should choose to testify. We disagree.
"`The trial court has broad discretion in the admission *** of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, [an appellate] court should be slow to interfere.'" (First alteration in original.) State v. Maurer (1984), 15 Ohio St.3d 239, 265, quoting State v. Hymore (1967), 9 Ohio St.2d 122, 128. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. Moreover, a new trial should not be granted unless the accused was prejudiced or may have been prejudiced by the evidence improperly admitted. R.C. 2945.83(C).
Crim.R. 16(B)(1)(e) provides that the prosecuting attorney, upon proper motion, shall "furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial[.]"
Evid.R. 615 provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion."
In the instant case, Ms. Frederick was never called as a witness. The prosecution simply asked Mr. Partin whether he had told Ms. Fredrick "If I can't have her [referring to Ms. Blondheim], no one can[.]" Mr. Partin does not aver that the prosecutor did not have a reasonable basis for asking the question; rather, he bases his argument on Crim.R. 16(B)(1)(e) and Evid.R. 615. As both Crim.R. 16(B)(1)(e) and Evid.R. 615 by their clear terms apply only to witnesses, we find them inapplicable to the instant situation. Hence, we cannot conclude that the trial court abused its discretion in allowing the prosecutor to inquire as to what statements Mr. Partin may have made to Ms. Frederick. Therefore, Mr. Partin's second assignment of error is overruled.
C.
Third Assignment of Error
 The trial court erred in permitting the State to make statements in its closing argument which were unsubstantiated by the evidence presented during trial. These statements amounted to prosecutorial misconduct and were highly prejudicial because they denied Appellant Partin his sixth amendment [sic] right to a fair trial, and therefore were sufficient to require reversal of Partin's conviction.
 Mr. Partin avers that the prosecutor's statements in closing arguments were improper. He argues that it was improper for the prosecutor to assume the role of Ms. Blondheim in recounting the events of the crime. Moreover, he asserts that the evidence presented at trial did not support the prosecutor's statements. We disagree.
"`Parties are granted latitude in closing arguments, and the question as to the propriety of these arguments is generally considered one falling within the sound discretion of the trial court.'" State v. Frazier (1995), 73 Ohio St.3d 323, 341, quotingState v. Loza (1994), 71 Ohio St.3d 61, 78. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. When the defendant has objected to the statement "`[t]he test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" Frazier,73 Ohio St.3d at 341, quoting State v. Smith (1984), 14 Ohio St.3d 13, 14. However, some latitude is given to both parties in closing arguments so long as the statements are based on evidence adduced at trial. Frazier, 73 Ohio St.3d at 338.
Mr. Partin asserts that the following statements made by the prosecutor were improper:
MR. CARROLL [for the state]:
* * *
 The person you don't hear from in this case is Cassandra Blondheim. And I tell you that Cassandra Blondheim says, even though she couldn't testify in the trial, that this is what happened to me.
"I'm standing there." Cassandra is working
 MR. VARIAN [for Mr. Partin]: Excuse me, object, Your Honor, improper close.
THE COURT: I'm going to allow it.
MR. VARIAN: Improper close.
THE COURT: I'll allow it.
 MR. CARROLL: "a man comes up behind me, Shane Partin, and what does he do to me? He reaches around with" — does she see the knife at the time? We don't know that. We can't tell from the witnesses or from any of the physical evidence.
 But Cassandra Blondheim tells you that, "He reaches with that knife into my lower chest, tries to stab me."
 And how do we know that? Attorney Varian cannot live with that, but how do we know it happened that way? Josh Conner saw it and he told you.
 He is mistaken. He is lying. You're going to have to decide that.
 What did Dr. Platt tell us? Stab wound, the lower stab wound went through the apron, it went through the doubled over blouse. Why is that? Because she's in this bear hug. It went through a T-shirt that she was wearing. There were buttons there. She is struggling.
 It is a stab wound and that is why it is not fully penetrating the four-inch blade of the knife.
 Now, what happens next? Cassandra Blondheim can tell you. "I am hurt. I am bleeding, but I am alive and I am able to resist. And what do I do?
 "I go to the ground and I see this man kneeling above me with the knife and he's going to stab me again.
 "And in an attempt to save my life I defensively try to stop the knife from plunging into my neck."
 And how do we know that? There is a defensive wound on her hand.
 Well, what does Shane Partin do? Cassandra Blondheim would tell that you [sic] "As I try to fend him off, he knocks my hands aside so that he has a clear shot at my throat and he forcefully plunges that knife, the full length of the blade, into my neck, arteries and heart. I'm dying. I know this is a serious wound. People come to my aid.
 "I see Paul Bruch trying to help me." What does he do? How can it possibly be a problem for him if Paul Bruch tries to render some aid to Cassandra Blondheim? It can't be.
 If he's down there on the ground he is no threat to Shane Partin. Shane Partin won't let that happen.
 Attorney Varian would like you to disregard what the witnesses say because of the difficult situation they are put in. But Josh Conner and Michelle Knechtl told you specifically and directly and I tell you that the evidence is that the first wound to the lower chest shows a purpose to cause death because of the nature of the injury.
 He's not trying to cut her hands or her foot or a non-lethal area.
 And if there's any doubt, and it's not what Attorney Varian told you, it's not the start of the process that he has to have a purpose. It's at the point that he is plunging the knife.
 At the point that he tries to push the arms aside and plunges that knife into her throat there is no issue about what his purpose is.
* * *
 While the prosecutor's tactic of describing the incident from the point of view of Ms. Blondheim may have been colorful and creative, we conclude that it was based on evidence in the record and did not exceed the latitude afforded counsel in closing arguments. The prosecutor simply described the injuries and their causes, stab wounds and defensive wounds alike. This description was based on testimony in the record, at some points verbatim. The prosecutor did not speculate as to the pain Ms. Blondheim may have been in or what she may have felt, rather he simply described what the evidence indicated had happened to her. After reviewing the record and finding that the prosecutor's assertions in closing argument were supported, we cannot conclude that the prosecutor exceeded the latitude afforded counsel in closing arguments or that the trial court abused its discretion by overruling Mr. Partin's objection. Therefore, Mr. Partin's third assignment of error is overruled.
 III.
Mr. Partin's three assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 __________________________ WILLIAM G. BATCHELDER
FOR THE COURT SLABY, J.
CARR, J., CONCUR