OPINION
{¶ l} Defendant-appellant, Tangie J. Thomas ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas convicting her of attempted murder and felonious assault with firearm specifications entered pursuant to her plea of no contest.
 {¶ 2} The charges in this case arise out of an incident occurring on December 9, 2005, in which Marcus Harris was shot several times outside of his mother's residence. *Page 2 
In November 2005, a month prior to the shooting, Travis Harris stabbed appellant's son in the eye with a knife resulting in severe and debilitating injuries. In December 2005, Marcus, Travis' brother and the victim in this case, was residing with his girlfriend and their child at Marcus' mother's house on Ruhl Avenue in Columbus, Ohio. At approximately 10:30 p.m. on December 9, 2005, Marcus and his girlfriend Laura Staunton ("Staunton") were in the process of leaving the residence when they were approached by appellant. According to the testimony, as appellant approached she asked Marcus where Travis was. Marcus did not reply and kept walking. Appellant again inquired where Travis was, and Staunton responded that he was in jail. Appellant then asked Marcus if he was Travis' brother, and when Marcus replied that he was, appellant pulled a handgun from her coat and fired at Marcus. Marcus started to run, but appellant fired two more shots and Marcus fell. Appellant started walking away, and Staunton began trying to drag Marcus to the front of the car. Appellant then returned and said, "You're not dead yet, bitch? You're a hard mother fucker to kill, huh?" (Tr. at 36.) Appellant began firing additional shots at Marcus, whereupon he yelled for Staunton to go into the house. Again, appellant began to walk away, but then turned back to Marcus and attempted to fire the gun, however, there were no bullets remaining. After the failed attempt to fire the gun, appellant began stomping, jumping, kicking, and spitting on Marcus. Thereafter, Marcus was transported to the hospital with multiple gunshot wounds.
 {¶ 3} Sergeant Bob Cull of the Bexley Police Department testified that he received a description of the suspect. Sgt. Cull saw a person matching the suspect's description a few blocks from the scene of the shooting. As he approached, he saw the person throw something to the curb. He identified the suspect as appellant and *Page 3 
recovered two handguns along the curb. Appellant was returned to the scene where Staunton identified her as the shooter.
 {¶ 4} On December 16, 2005, appellant was indicted by a Franklin County Grand Jury on one count of attempted murder, with a firearm specification, one count of felonious assault, with a firearm specification, and one count of carrying a concealed weapon. In March 2006, appellant filed a motion requesting a mental health examination and indicating her desire to enter a plea of not guilty by reason of insanity ("NGRI"). Christopher Ray, Ph.D. via court-appointment, conducted an examination of appellant. The cover letter accompanying the full report was filed with the trial court and indicated that appellant did not have a mental defect, but that at the time of the offense she was intoxicated on alcohol and marijuana and was experiencing a severe mental disease. The letter concluded that despite appellant's severe mental disease and state of intoxication, she knew the wrongfulness of her actions.
 {¶ 5} A jury trial commenced on April 17, 2006. At trial, appellant's counsel asserted that he wanted to be able to use Dr. Ray's mental health examination and proceed on the NGRI defense. Although he had not yet done so, appellant's counsel indicated that he would subpoena Dr. Ray by the end of the first day of trial. Appellant's counsel also related that he believed Dr. Ray would testify as indicated in his report, i.e., that appellant knew the wrongfulness of her actions. The trial court indicated that without expert testimony to support the NGRI defense, the issue regarding appellant's sanity would not go before the jury. The state proceeded with its case. Thereafter, appellant changed her plea to a no contest plea to preserve the right to appeal the trial court's refusal to instruct on the NGRI plea. *Page 4 
 {¶ 6} On June 2, 2006, the trial court imposed an eight-year term of incarceration on the attempted murder conviction with an additional three years for the firearm specification. The trial court also imposed a seven-year term on the felonious assault conviction to run concurrent with the eight-year sentence. At the sentencing hearing, the trial court recognized 175 days of jail-time credit; however, it awarded 0 days of jail time credit in the sentencing entry.
 {¶ 7} Appellant timely appeals, and brings the following two assignments of error for our review:
 FIRST ASSIGNMENT OF ERROR
 The trial court denied Appellant's confrontational rights under the state and federal Constitutions by barring her from questioning an examining psychiatrist as to his conclusion that Appellant's serious mental disease did not prevent her from knowing the wrongfulness of her actions.
 SECOND ASSIGNMENT OF ERROR
 The trial court erred in failing to award Appellant jail credit for 175 days that she was held while awaiting sentencing.
 {¶ 8} In her first assignment of error, appellant argues the trial court deprived her of her constitutional right to confront and cross-examine witnesses against her when it indicated it would not allow appellant to proceed on her proposed NGRI defense without evidence to support it. With respect to appellant's NGRI claim, the record contains only the cover letter of Dr. Ray's report, which states, in part:
 * * *It is my opinion, with reasonable psychological certainty, that the defendant does not have a mental defect but at the time of the alleged offenses she was intoxicated on alcohol and marijuana and she was experiencing a severe mental disease which manifested itself in the form of severe depression, anger, and euphoria. It is also my opinion that *Page 5 
despite her severe mental disease and state of intoxication, she nevertheless knew the wrongfulness of her actions.
(Mar. 31, 2006 Report.)
 {¶ 9} Based on the transcript of the proceedings, neither Dr. Ray's full report, nor his testimony was proffered by appellant, nor is Dr. Ray's full report part of the record. The following exchange occurred during trial and outside the presence of the jury:
 [The Court]: What testimony are you going to have on that issue?
 [Appellant's Counsel]: The doctor's testimony, Your Honor, and the report.
 [The Court]: The report says she's sane.
 [Appellant's Counsel]: Yeah. But that's just a final conclusion. The rest of the report talks about her emotional and mental condition. And I think it's up to the jury of whether or not she was sane. I understand that the doctor doesn't agree on the final issue but that's what we intend to argue. We intend to argue the final issue to the jury.
 [The Court]: Are you going to have any mental health expert connecting mental illness with her ability to know right from wrong?
 [Appellant's Counsel]: No. We believe this doctor here is going to say that she knew right from wrong based on this report. I don't have a medical professional who says that it is the way we want it to conclude that yes, she didn't know right from wrong. So essentially we are going to use this expert's opinion regarding his mental health examination but for the final conclusion. I mean, there are other facts. There are facts involved in this case that we intend to argue to the jury that ultimately she did — you know, she didn't know right from wrong at the time.
(Tr. at 5-6.) *Page 6 
 {¶ 10} Thus, according to the above, appellant wanted to call Dr. Ray as a witness in order to impeach his conclusion that appellant was sane at the time of the offenses. Because the trial court indicated that it would not allow appellant to proceed on her NGRI claim absent some evidence that supported said claim, appellant argues the trial court violated her constitutional right to confront and cross-examine witnesses against her.
 {¶ 11} "A person is `not guilty by reason of insanity' relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(14). "The defense of NGRI is an affirmative defense that must be proved by the accused." State v. Taylor, 98 Ohio St.3d 27, 38,2002-Ohio-7017, citing R.C. 2901.05(A); R.C. 2901.01(A)(14). "The proper standard for determining in a criminal case whether a defendant has successfully raised an affirmative defense under R.C. 2901.05 is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." State v. Tantarelli (May 23, 1995), Franklin App. No. 94APA11-1618, quoting State v. Melchior (1978),56 Ohio St.2d 15, 20-21.
 {¶ 12} Both the Sixth Amendment Confrontation Clause and the Ohio Constitution guarantee a criminal defendant the right to cross-examine witnesses who testify against him. State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235. However, appellant's sanity is not an element of any of the offenses of which she was charged, and appellee need not prove, or put on any evidence with respect to appellant's sanity. In fact, the contrary is true. By entering a NGRI plea and raising the affirmative defense of insanity, appellant *Page 7 
placed her mental capacity at issue. In order to establish an insanity defense, the accused must establish by a preponderance of the evidence that he or she did not know, as a result of a severe mental disease or defect, the wrongfulness of his or her acts. State v. Hancock,108 Ohio St.3d 57, 2006-Ohio-160, see, also, State v. Staten (1969),18 Ohio St.2d 13. Thus, the burden of proof with respect to the NGRI plea rested with appellant. Only the cover letter of the court-appointed examiner's report was filed with the trial court. The cover letter undeniably concludes that appellant was sane at the time of the offenses. Because there was no evidence to support the NGRI claim, the trial court indicated that it would not permit the issue of appellant's sanity to come before the jury. Dr. Ray's report was not admitted into evidence, nor was his report or testimony proffered. Accordingly, it cannot be said that appellant's right to confront and cross-examine witnesses was infringed because nothing was presented to the trier of fact upon which to cross-examine.
 {¶ 13} Further, the admission or exclusion of evidence lies within the trial court's sound discretion. State v. Bailey, Franklin App. No. 04AP-553, 2005-Ohio-4068, citing State v. Bey (1999), 85 Ohio St.3d 487,489-490. This court will not disturb a trial court's evidentiary ruling absent an abuse of discretion. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 66. An abuse of discretion connotes more than an error of law, it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} "The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Spisak v. Mitchell (2006),465 F.3d 684, 692, quoting Crane v. Kentucky (1986), 476 U.S. 683, 690,106 S.Ct. 2142. Having the opportunity to *Page 8 
be heard is an essential component of procedural fairness. Id. However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." Id., quotingUnited States v. Scheffer (1998), 523 U.S. 303, 308, 118 S.Ct. 1261.
 {¶ 15} When considering whether to allow expert testimony to support an NGRI claim, such as appellant sought to use, the Supreme Court of Ohio has "uniformly upheld trial courts that have excluded this type of testimony in the trial phase of criminal trials, including capital cases." Taylor, at 39. Except in mitigation, "a defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that, due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." Id., quoting State v.Cooey (1989), 46 Ohio St.3d 20, 26.
 {¶ 16} In Taylor, the defendant entered an NGRI plea and proffered the testimony of three experts to support his plea. However, none of the experts proffered by the defendant supported his NGRI plea. In fact, all three stated during the trial court's voir dire that Taylor was sane at the time he committed the murders. Like appellant, Taylor sought to call the experts as witnesses regardless to impeach their conclusions that he was sane at the time of the murders. The trial court refused to permit such testimony. In upholding the trial court's exclusion of such witnesses, the Supreme Court of Ohio stated:
 In our view, the expert testimony appellant offered did not support his insanity defense, since all three experts concluded that he was not insane at the time of the murders. The evidence that appellant sought to introduce in the guilt phase had no probative value, and appellant's use of it would have had a strong tendency to confuse the issues. Moreover, since the evidence did not support appellant's defense, we find that *Page 9 
excluding it did not prejudice appellant. Therefore, the trial court did not abuse its discretion in excluding this testimony. Adams, 62 Ohio St.2d at 157, 16 O.O.3d 169, 404
N.E.2d 144. Accordingly, we reject appellant's first proposition.
Id. at 39.
 {¶ 17} In the case sub judice, there was no proffered testimony. The record contains the cover letter of Dr. Ray's report, which concludes that appellant was sane at the time of the shooting, and the indication from appellant's counsel that if called, Dr. Ray would testify in accordance with his report. There is nothing in the record to support appellant's NGRI plea, and in fact, the record contains only the contrary conclusion. Like the defendant in Taylor, appellant sought to call Dr. Ray to impeach his conclusion that appellant was sane at the time of the offenses. However, because Dr. Ray concluded that appellant was sane at the time of the offenses, the testimony appellant sought to introduce did not support her NGRI claim, and thus had no probative value. Having no probative value, and yet having a strong tendency to confuse the issues, we cannot find that the trial court abused its discretion in excluding the testimony. See Taylor, supra. Nor can we find that appellant was prejudiced or was deprived of her constitutional right to confront witnesses, or to a fair trial. Id., see, also,Spisak, supra. Consequently, we overrule appellant's first assignment of error.
 {¶ 18} In her second assignment of error, appellant contends the trial court erred in failing to award jail-time credit in the judgment entry, despite stating at the sentencing hearing that appellant was entitled to 175 days of jail time credit. Appellee concedes this error is present in the judgment entry. Accordingly, we sustain appellant's second *Page 10 
assignment of error, and remand this matter to the trial court so that proper jail time credit can be awarded.
 {¶ 19} For the foregoing reasons, appellant's first assignment of error is overruled, appellant's second assignment of error is sustained, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed in part, reversed in part, and remanded to that court for further proceedings consistent with this opinion.
Reversed in part; affirmed in part; and remanded for furtherproceedings.
 SADLER, P.J., and BRYANT, J., concur. *Page 1