*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DAVID A. SNEED,

        *Petitioner-Appellant,*

        *v.*

DAVID JOHNSON, Warden,

        *Respondent-Appellee.*

No. 07-3349

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00588—Patricia A. Gaughan, District Judge.

Argued: October 15, 2009

Decided and Filed: March 31, 2010

Before: BATCHELDER, Chief Judge; GIBBONS and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** William S. Lazarow, LAW OFFICES, Columbus, Ohio, for Appellant. Holly E. LeClair, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** William S. Lazarow, LAW OFFICES, Columbus, Ohio, Alan C. Rossman, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Adam M. Van Ho, OFFICE OF THE OHIO ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Chief Judge. Ohio death-row inmate David Sneed appeals the district court's judgment denying his petition for a writ of habeas corpus. We affirm.

1

**I.**

Chevette Brown was a 19-year-old prostitute in Canton, Ohio, and David Sneed was her pimp.  Herbert Rowan had come to town from Chicago and was driving around in the wee hours of the morning, after the bars had closed.  At Sneed's prompting, Brown stopped Rowan and eventually asked him if he would give her and Sneed a ride home.  Rowan agreed, and the two got into his car, with Brown in the front seat and Sneed in the back, directing Rowan where to go.

Rather than directing Rowan to his home, however, Sneed directed Rowan to a deserted alleyway and demanded that Rowan give him all his money and jewelry.  When Rowan refused, Sneed shot him in the head.  Rowan slumped forward.  Sneed got out, opened the driver's door, pushed Rowan's body over, ordered Brown into the back seat, and drove to another deserted alley where he took Rowan's money and jewelry and ordered Brown to shoot Rowan in the head.  Brown did as she was told and Sneed put Rowan's body in the trunk.  Sneed then drove home to get a garment bag, some electrical wires from some lamps, and a big cement block.  Sneed and Brown, with some help from Sneed's brother, put Rowan's body in the garment bag and tied the cement block to it with the lamp cords and some wire from the speakers in Rowan's car.  At some point during this process, Sneed admitted to his brother that both he and Brown had shot Rowan.  The three then drove to a bridge, over which Sneed and his brother threw Rowan's body, but the body missed the water and landed on the river bank, where it was found later that day.

The State of Ohio indicted Brown and Sneed for aggravated murder with death penalty and firearm specifications, and aggravated robbery with a firearm specification.  Brown eventually confessed to her part in the crime and accepted a plea deal to avoid the death penalty.  She is currently serving a term of life imprisonment.  The court initially found Sneed incompetent to stand trial and postponed his trial for about a year, until his competency was restored through psychotropic drug treatments.  When trial eventually commenced, both Brown and Sneed's brother testified against Sneed.  This testimony was particularly damning because Sneed's theory of defense was that he had not shot Rowan; Brown had.  The jury convicted Sneed on all charges and specifications.  During the penalty

phase of the trial, three psychologists testified to Sneed's mental instability. The jury recommended that Sneed be sentenced to death, and the court imposed that sentence.

Sneed appealed and both the state appellate court and the Ohio Supreme Court affirmed his conviction and sentence. Sneed sought post-conviction relief on the basis that his trial counsel had been constitutionally ineffective, but the trial court denied relief. The state appellate court affirmed the denial and the Ohio Supreme Court declined to hear any further appeal.

Sneed filed a habeas petition in federal court in 2002, pressing 13 claims of constitutional error. The district court considered and rejected each claim, and granted a certificate of appealability ("COA") on two claims of ineffective assistance of counsel. Sneed appealed here and, after obtaining an expanded COA, presses three claims of ineffective assistance of counsel.

## II.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show not only that his counsel's performance was deficient, but that his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the petitioner must show his "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To establish prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A habeas petitioner is entitled to relief on an ineffective-assistance claim only if the state court's rejection of that claim was "contrary to, or involved an unreasonable application of" *Strickland*, or rested "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Sneed first claims that his trial counsel was ineffective during the penalty phase because he failed to investigate the possibility that Sneed has organic brain damage and the possibility that he had been sexually abused as a child. The district court found that his counsel had produced a "wealth" of mitigation evidence (and recounted the testimony of 17 separate defense witnesses, including three psychological experts) and held that counsel's

investigation was sufficient.  On appeal, Sneed contends that his counsel was obliged to discover the brain damage and sex abuse, and produce evidence of how it would mitigate the murder.  The government counters that even Sneed's own post-conviction psychological expert was equivocal about the alleged brain damage and, at the time of the penalty phase of trial, the only indication of childhood sexual abuse was Sneed's vague statement to a court-appointed psychiatrist during a competency evaluation, from which that psychiatrist diagnosed Sneed as grandiose and delusional.  Therefore, the government asserts, the failure to discover or press these issues was not deficient performance, and, even if it were, Sneed cannot show prejudice in light of the totality of the evidence presented at the penalty phase.

In two recent cases, the Supreme Court has clarified the parameters for measuring effectiveness based on counsel's collection and presentation of mitigation evidence. *Compare Porter v. McCollum*, 558 U.S. --, 130 S. Ct. 447, 453 (2009) (holding performance deficient because "counsel did not even take the first step of interviewing witnesses or requesting records"), *with Bobby v. Van Hook*, 558 U.S. --, 130 S. Ct. 13, 18-19 (2009) (holding performance not deficient because counsel gathered a substantial amount of information and then made a reasonable decision not to pursue additional sources).  In the present case, Sneed's counsel produced 17 witnesses, including three psychological experts, at least some of whose testimony concerned Sneed's mental health and severely troubled childhood.  This case is not like *Porter*, in which an attorney conducted virtually no investigation; this case is like *Van Hook*, in which an attorney conducted an extensive investigation and presented a substantial amount of information.  Applying AEDPA deference, we conclude that Sneed has failed to demonstrate that the state court's application of *Strickland* was objectively unreasonable.

Sneed next claims that his trial counsel was ineffective at the guilt phase for failing to pursue an insanity defense.  The district court found that Sneed's counsel's decision to forgo this defense was not "objectively unreasonable."  Ohio's insanity-defense statute, the court said, requires the defendant to prove that he did not know the wrongfulness of his act, O.R.C. § 2901.01(A)(14), and — as far as this defense is concerned — Sneed was plagued by at least three problems:  (1) a government psychiatrist had testified that, although mentally disturbed, Sneed likely did know the wrongfulness of his actions; (2) the prosecution introduced evidence that Sneed was malingering and faking his insanity; and

(3) the events surrounding the murder depicted a "calculating criminal" and not an insane person.

On appeal, Sneed argues that the district court used the wrong insanity-defense standard (one that was narrowed after Sneed's trial) and that, under the proper standard, the expert testimony would have supported an insanity defense. Sneed also posits that his post-conviction psychological expert's report is further evidence of his insanity and that Sneed's counsel was therefore not only ineffective for failing to raise the insanity defense, but also for failing to obtain a formal sanity evaluation prior to trial. Sneed does not address the evidence of his malingering or the circumstances of the murder. The government does not rebut Sneed's claim that the district court used the wrong insanity-defense standard, but points out that under either standard an insanity defense would have required Sneed to admit every element of the crime and would have placed on him the burden of proving insanity. Thus, the evidence of malingering, the circumstances of the crime, and the public's widespread skepticism of the insanity defense at the time of Sneed's trial in 1986 (circa the John Hinkley trial), indicate that this was not an attractive defense. Moreover, Chevette Brown had admitted that Rowan was still moving when she shot him, which supported the theory on which the defense actually proceeded at trial — that Brown was the killer.

Sneed may be correct in his assertion that the district court got the standard wrong,[1] but his claim is nonetheless meritless because he is wholly unable to prove prejudice. None of the experts — not even his own post-conviction psychologist — testified that Sneed was legally insane at the time of the murder, so even if Sneed's counsel had raised the insanity defense and presented the most favorable experts' testimony, he still could not have met the burden of proving that Sneed was legally insane when he committed the murder.

Finally, Sneed claims that his trial counsel was ineffective at the guilt phase for failing to challenge the "principal offender" instructions given to the jury. The district court agreed with the Ohio Supreme Court's finding that "the jury found, on a separate verdict

---

[1]The district court quoted the standard contained in Ohio Revised Code § 2901.01(N), enacted in 1990, as well as the prior standard, as set out in *Ohio v. Staten*, 247 N.E.2d 293, syllabus ¶ 1 (Ohio 1969) (vacated on other grounds, 408 U.S. 938 (1972), which was applicable when Sneed was tried in 1986, *see Ohio v. Luff*, 621 N.E.2d 493, 498 (Ohio Ct. App. 1993). The district court referred as well to the standard necessary for establishing insanity as a mitigating factor in a capital proceeding. *See* Ohio Revised Code § 2929.04(B)(3). It is unclear which of these standards the district court actually applied in its analysis.

form, that [Sneed] 'DID personally perform every act constituting the offense in this case of Aggravated Murder,'" and therefore concluded that there was no error in the instruction and no ineffectiveness in failing to object to the instruction. On appeal, Sneed disagrees with the Ohio Supreme Court's factual finding — i.e., that the jury found that Sneed committed the murder — and contends that the verdict form was too vague to support such a finding. The government argues that Sneed is focused on one out-of-context instruction, while the totality of the instructions and verdict forms establish that the jury found that Sneed was the principal offender, just as the Ohio Supreme Court and the district court concluded. In his reply brief, Sneed emphasizes (and re-emphasizes) the flaw in the individual instruction, without ever addressing the totality of the instructions or verdict forms. But we have looked carefully at the instructions and we have no doubt that while the original instruction and jury form may have been problematic, any error was rectified by the later verdict form in which the jury expressly and unanimously found that Sneed had been the principal offender. These jury instructions did not make the trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

## III.

For all of the foregoing reasons, we **AFFIRM** the district court's judgment.